IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF TENNESSEE

| | |
|---|---|
| Tracy Arnold, Bill Arnold<br>    Plaintiffs<br><br>vs.<br><br>City of Crump, Larry Wilbanks<br>(in his Official and Individual Capacity),<br>Tim Kelly (in his Official and Individual<br>Capacity), Randall Warren<br>    Defendants | Cause #<br><br><br><br>Jury NOT requested:<br>*"Deuteronomy 25:1: If there be a*<br>*controversy between men, and they come*<br>*unto judgment, that the judges may judge*<br>*them; then they shall justify the righteous,*<br>*and condemn the wicked."* |

**RECEIVED BY**

NOV 1 9 2018

**Thomas M. Gould, Clerk**
**U.S. District Court**
**W. D. OF TN, Jackson**

## PLAINTIFF'S ORIGINAL COMPLAINT

### 1. PARTIES

1.1 . Plaintiff, Bill Arnold, a Citizen of the Kingdom of YHWH, sojourning at 1400 Harris Road Adamsville, Tennessee.

1.2 . Plaintiff, Tracy Arnold, a Citizen of the Kingdom of YHWH, sojourning at 1400 Harris Rd Adamsville, Tennessee.

1.3 . Defendant, City of Crump, a Municipal Corporation of the State of Tennessee, may be served by delivering a copy of the summons and the complaint to the chief executive officer and final policy maker, Glen Spencer, at 3020 US Highway 64 Crump, Tennessee 38327.

1.4 . Defendant, Tim Kelly,Crump Chief of Police and Citizen of the State of Tennessee, may be served by delivering a copy of the summons and the complaint to the Crump Police Department, at 3020 US Highway 64 Crump, Tennessee 38327.

1    1.5 . Defendant, Larry Wilbanks, an individual and a citizen of the State of Tennessee,
2          may be served with process at 300 Industrial Park Dr Selmer, Tennessee 38375.
3    1.6 . Defendant,Randall Warren, an individual and a citizen of the State of Tennessee,
4          may be served with process at 2305 US Highway 64 Adamsville, Tennessee 38310
5          or PO Box 732 Adamsville, Tennessee 38310.

## 2. JURISDICTION AND VENUE

6    2.1 . This action is brought pursuant to 42 U.S.C § 1983, 1985(3) and 1986, the Fourth,
7          First, Thirteenth, Fifth and the Fourteenth Amendments to the United States Consti-
8          tution.
9    2.2 . Jurisdiction is founded upon 28 U.S.C. § 1331 and 28 U.S.C. § 1343(a)(3) and (4)
10         in that this is an action to redress the deprivation, under color of law, of the rights
11         secured by the Constitution of the United States, and by federal law." The district
12         courts shall have original jurisdiction of all civil actions arising under the Constitu-
13         tion, laws, or treaties of the United States."
14   2.3 . In connection with the acts, practices and violations alleged below, the Defendants
15         the City of Crump, Randall Warren, Tim Kelly and Larry Wilbanks, have each, ei-
16         ther directly or indirectly violated clearly established constitutionally secured rights,
17         as well as statutory and common law duties owed to each Plaintiff.
18   2.4 . Venue is proper in this Court under 28 U.S.C § 1391(b)(1)(2) because Defendants
19         City of Crump, Larry Wilbanks and Warrens Towing reside in this judicial district
20         and the events occurred and property was taken within this district.
21   2.5 . The unlawful acts and practices alleged herein occurred within the interior boarders
22         the City of Crump, County of Hardin, Tennessee, which is within this judicial dis-
23         trict.

## 3. INTRODUCTION

3.1 . From June 2017 and continuing thereafter to this day, Defendants caused Plaintiffs Tracy Arnold and Bill Arnold to be deprived of their property without due process of law and under color of law. As a result of the defendants actions, Plaintiffs have been deprived of their property for over one year which resulted in multiple other damages listed below. In spite of the fact that it became clear to Larry Wilbanks, Randall Warren, Tim Kelly and the City of Crump that all charges against Tracy Arnold were dismissed with costs taxed to the state, which was the probable cause relied on when taking and refusing to release the property, Defendants continued to refuse to release the property.

3.2 . From June 2017 continuing to this day, the City of Crump through its final policy maker, Mayor Glen Spencer, ratified Defendant Larry Wilbanks and Randall Warrens actions by telling Bill Arnold and Tracy Arnold that they can only have the property back if they pay a privilege tax on their property.

3.3 . From June 2017 continuing to this day, all Defendants have continued to deprive the Plaintiffs of property without due process of law, without probable cause, without warrant, without lawful basis and without informing the Plaintiffs on how to challenge the taking of their property.

3.4 . From June 2017 continuing to this day in spite of FOIA requests, Defendants have not provided the Plaintiff any authorization made by the police department to tow their van or a tow in form, seizure form, lawful hearing or any other documentation regarding the taking of the property. The only response to the FOIA requests submitted by Plaintiffs to the City of Crump are copies of the tickets and the dismissal of all charges with costs taxed to the state.

3.5 . From July 2017 and continuing to this day, Tim Kelly knew that there was no lawful hearing and that all charges had been dismissed. Tim Kelly, who is the Chief of Police for Crump, Tennessee, alleges that Plaintiffs can only have their van back if they pay a privilege tax on their property.

## 4. FACTS COMMON TO ALL COUNTS

### 4.1 . PROPERTY TAKEN

1    4.1.1 . At all time relevant to this suit, Larry Wilbanks was employed by the City of
2        Crump as a Crump policeman.

3    4.1.2 . At all times relevant to this suit, Glen Spencer was employed by the City of
4        Crump as the Mayor of Crump Tennessee.

5    4.1.3 . On May 29, 2017 through June 2017 Jeff Plunk was employed by the City of
6        Crump as the Crump Chief of police.

7    4.1.4 . Jeff Plunks' last day employed by the City of Crump was approximately June 30,
8        2017.

9    4.1.5 . From July 2017 and continuing thereafter, Tim Kelly was employed by the City
10       of Crump.

11    4.1.6 . On May 29, 2017, Tracy Arnold was traveling to the Savannah Tennessee Park
12       in the Arnold's family van, a White 1999 Dodge van (hereinafter "the van") with 5
13       daughters and 1 niece.

14    4.1.7 . Wilbanks, driving a Crump police motor vehicle, pulled behind the van and en-
15       gaged emergency lights.

16    4.1.8 . Tracy stopped the van on the Valero Gas Station lot at 4010 U. S. Highway 64,
17       Crump, Tennessee.

18    4.1.9 . Wilbanks asked Tracy for her license and registration.

19    4.1.10 . Wilbanks stopped Tracy for not having displayed a receipt for the payment of a
20       privilege tax on the back of the van.

21    4.1.11 . Tracy did not have a valid license.

22    4.1.12 . Bill and Tracy Arnold have no known legal duty to pay a privilege tax on their
23       property.

24    4.1.13 . Tracy explained she was not engaged in any for-profit activity affecting a public
25       interest for which a privilege tax was due.

1    4.1.14 . Wilbanks stated Tracy has to have a license and registration.

2    4.1.15 . Wilbanks told Tracy to call someone to pick up the 6 little girls.

3    4.1.16 . About a minute or two later Wilbanks told Tracy he was going to call DCS to

4       get them because he doesn't have time to wait.

5    4.1.17 . Tracy asked for Wilbanks supervisor.

6    4.1.18 . Wilbanks stated he was the supervisor.

7    4.1.19 . Tracy asked for Wilbanks to call his superior.

8    4.1.20 . Wilbanks immediately responded that nobody was available.

9    4.1.21 . Tracy said that Bill will be there in 15 minutes.

10   4.1.22 . Wilbanks stated if Bill does not have a license or registration then Bill can not

11      pick up their daughters.

12   4.1.23 . Bill was able to have two friends pick up the girls in two separate motor vehicles

13      for this non privilege help.

14   4.1.24 . Tracy helped put the girls into the motor vehicles.

15   4.1.25 . Tracy secured the van.

16   4.1.26 . Randall Warren of Warren's towing arrived with his tow truck.

17   4.1.27 . Wilbanks handcuffed Tracy.

18   4.1.28 . Wilbanks placed Tracy into the back to the Crump Police motor vehicle.

19   4.1.29 . Wilbanks ordered Warren to take the van.

20   4.1.30 . Tracy told both Wilbanks and Warren she does not consent to them taking the

21      van.

22   4.1.31 . Warren towed the van.

23   4.1.32 . Wilbanks transported Tracy against her will to the Hardin County jail.

24   4.1.33 . Tracy was seized, stopped and taken up for traveling without a pass for travel.

25   4.1.34 . At the jail, Tracy requested to be taken before a magistrate immediately.

26   4.1.35 . Wilbanks laughed at Tracy's request.

1   4.1.36 . Wilbanks told the jail staff that he was going to charge Tracy with false identifi-
2       cation.

3   4.1.37 . Tracy is not aware of any evidence or incident where she used false identifica-
4       tion for the purpose of obtaining goods, services or privileges that she was not oth-
5       erwise entitled to.

6   4.1.38 . Tracy asked Wilbanks what was he going to do.

7   4.1.39 . Wilbanks told Tracy it was none of her business as he was not talking to her.

8   4.1.40 . Tracy stated she has the right to know the nature and cause of the accusations
9       against her.

10   4.1.41 . Wilbanks told Tracy that he doesn't have to tell her anything and that he can
11       bring an action against her for up to 3 years.

12   4.1.42 . Tracy was put in a holding cell for approximately 6 hours.

13   4.1.43 . Tracy was released on her own recognizance without having any communica-
14       tion with a Magistrate or Judge.

15   4.1.44 . Tracy was not provided any documentation related to the towing of the van.

16   4.1.45 . Tracy was not provided any documentation or information on how to challenge
17       the taking of the van.


**4.2 . UNABLE TO PICK UP THE VAN DUE TO A "POLICE HOLD" (PRIOR TO HEARING)**

18   4.2.1 . On May 30, 2017, Plaintiffs went to Warrens Towing to pick up the van.

19   4.2.2 . Warren said he could not release the van as Wilbanks placed a 'hold' on the van.

20   4.2.3 . Tracy requested Warrens Towing to provide a copy of any documentation of a
21       "police hold" on the van.

22   4.2.4 . Tracy requested Warrens Towing to provide her with a copy of any documenta-
23       tion related to the towing of the van.

24   4.2.5 . Warren said he did not have anything.

25   4.2.6 . Warren said that maybe Wilbanks had something.

1  4.2.7 . Tracy called the City of Crump Police Department and requested any documenta-
2      tion regarding the taking of the van.
3  4.2.8 . Tracy was told that she would need to talk to Wilbanks.
4  4.2.9 . On or about May 30, 2017, Wilbanks called Tracy to tell her that she could only
5      have the van back if she registers it.
6  4.2.10 . Wilbanks also told Tracy that only a licensed driver can pick it up.
7  4.2.11 . TCA 5-8-102(b) provides that registration constitutes a privilege tax.
8  4.2.12 . Plaintiffs are not in receipt of any judicial determination that they are liable for
9      the payment of a privilege tax.


### 4.3 . SAVANNAH TENNESSEE GENERAL SESSIONS COURTHOUSE

10  4.3.1 . On June 2, 2017, at arraignment, Tracy moved the court for a preliminary hear-
11      ing.
12  4.3.2 . On June 13, 2017, at preliminary hearing, none of the defendants appeared in
13      court.
14  4.3.3 . The Prosecution dismissed all charges with costs taxed to the state
15  4.3.4 . Tracy moved the court to release the van.
16  4.3.5 . General Sessions Judge Daniel Smith, informed Tracy Arnold, that he had "noth-
17      ing to do with that".


### 4.4 . POST JUDGMENT ATTEMPTS TO PICK UP THE VAN

18  4.4.1 . After the hearing, Bill and Tracy went to attempt to pick up the van from War-
19      rens Towing.
20  4.4.2 . Bill handed to Warren a copy of the judgment for dismissal of all charges, costs
21      taxed to the state, signed by Judge Daniel Smith.
22  4.4.3 . Warren said he still can not release the van without Wilbanks' consent.
23  4.4.4 . Bill asked if the City Mayor or Chief of Police would be sufficient.

1  4.4.5 . Warren said he "supposed it would".

2  4.4.6 . Bill went to Crump City Hall.

3  4.4.7 . The City of Crump Secretary said she would give Bill Arnolds' information to
4      Mayor Spencer.

5  4.4.8 . On or about June 14, 2017, Mayor Spencer called Bill.

6  4.4.9 . Bill informed Spencer of the dismissal of all charges.

7  4.4.10 . Spencer stated he would call Bill back after he contacts the City's Attorney.

8  4.4.11 . On or about June 15, 2017, Spencer called Bill to state that Bill would need to
9      register the van to get the van back.

10  4.4.12 . On or about June 15, 2017, Randall Warren called Bill to state that Wilbanks
11      refused to release the hold on the van.

12  4.4.13 . On June 27, 2017, Bill and Tracy certified mailed to Wilbanks, Plunk, Spencer
13      and Warren a copy of the judgment, proof the van belongs to Bill Arnold, and de-
14      mand letter for the return of the van.

15  4.4.14 . The 6/27/2017 letter included a notice of a $500 per day charge until the van
16      was returned to the Plaintiffs.

17  4.4.15 . On July 27, 2017, Tracy and Bill called the City to speak with the Chief of Po-
18      lice, Tim Kelly.

19  4.4.16 . Kelly spoke with the Plaintiffs as the new acting Chief of Police.

20  4.4.17 . Kelly told Plaintiffs he was aware of the situation.

21  4.4.18 . Kelly stated the others would not be happy that he was talking with us.

22  4.4.19 . Kelly told Bill if he would register the van that Kelly would take Bill to pick the
23      van up.

24  4.4.20 . Kelly stated it was seized because it was on the roads.

25  4.4.21 . Bill asked when was the lawful hearing for the seizure.

26  4.4.22 . Kelly then stated the van was not seized.

27  4.4.23 . Kelly stated again that the van could be picked up if it was registered.

1    4.4.24 . After the phone call with Kelly, Tracy and Bill certified mailed a copy of the
2         June 27, 2017, mailing to each of the Crump City Alderman.
3    4.4.25 . The 7/27/2017 mailing included an updated bill for $500 per day until the van
4         was returned to the Plaintiffs.
5    4.4.26 . Later on July 27, 2017, Kelly hand delivered a copy of Tennessee Code Statutes
6         and the dismissed affidavits made by Larry Wilbanks to Bill Arnold.


## 4.5 . PLAINTIFFS ATTEMPTS TO OBTAIN LEGAL BASIS AND AUTHORITY FOR TAKING AND KEEPING THEIR PROPERTY

7    4.5.1 . On October 3, 2017, Plaintiffs submitted a FOIA request to the city.
8    4.5.2 . The 10/3/2017 FOIA requested all records relating to the taking of the van.
9    4.5.3 . On October 12, 2017, Plaintiffs received a FOIA response from the City Attor-
10        ney, Dale Condor Jr., a copy of the alleged citations and the judgment that dis-
11        missed the alleged citations.
12   4.5.4 . On October 23, 2017, Plaintiffs submitted a second FOIA request to the city.
13   4.5.5 . The 10/23/2017 FOIA requested the tow bill, dispatch records, seizure docu-
14        ments, tow-in report, and any written document related to a police hold on the van.
15   4.5.6 . On or about October 25, 2017, Plaintiffs received a FOIA response from the city
16        attorney, Dale Condor Jr., stating there were no additional documents related to the
17        van.


## 4.6 . HARDSHIPS

18   4.6.1 . Plaintiff Tracy Arnold exercised her right to be free from involuntary servitude,
19        her right to liberty and hebekqwjflkwqjfwkjfk,mfjm,wkfmw.ajfw,fj,wjfkwjr right to
20        freely associate and was stopped, seized and taken to jail.
21   4.6.2 . Randall Warren and Larry Wilbanks took the plaintiff's property and has kept it

1  for over a year without any meaningful hearing, trial or documentation related to
2  the taking of the 1999 White Dodge Van.

3  4.6.3 . The City of Crump, Mayor Glenn Spencer and each Crump Alderman, did not re-
4  lease the van when made aware of all charges being dismissed related to the taking
5  of the van.

6  4.6.4 . Mayor and Alderman were informed that the Plaintiffs had not received any doc-
7  umentation authorizing the City of Crump or Larry Wilbanks to interfere with or
8  "hold" the property.

9  4.6.5 . There is no Tennessee Law providing the authority to "hold" property when it is
10  not being used as evidence or going through forfeiture and seizure procedures.

11  4.6.6 . The Defendants have not filed any forfeiture or seizure forms related to the van.

12  4.6.7 . There are no hardships on the Defendants to apply the law as written.

13  4.6.8 . There are no hardships on the Defendants to abide by constitutional require-
14  ments.

15  4.6.9 . Plaintiffs hardships include but are not limited to loss of freedom of association,
16  loss of free exercise of religion, fines, jail, loss of property, interference with the
17  ability to live a normal life, persecuted for not committing fraud on the state and
18  loss of freedom from badges and incidents of slavery.

19  4.6.10 . It is in the best interest of the public and public policy for all branches of gov-
20  ernment to apply the laws as written.

21  4.6.11 . There is substantial likelihood of success on the merits because there is not a
22  shred of evidence of Plaintiffs engaging in a for profit activity affecting a public in-
23  terest (ie privilege) therefore obligating plaintiffs to pay a privilege tax and due
24  process requires procedure and a prompt and meaningful hearing prior to the depri-
25  vation or within a reasonable time after the deprivation.

### 4.7 . COLOR OF LAW

4.7.1 . There are no pending charges against the Plaintiffs related to the taking of the white Dodge van.

4.7.2 . There is no judicial determination that the Plaintiffs property is an automobile required to pay a privilege tax, ie motor vehicle.

4.7.3 . There were no alcohol or drugs involved in the taking of the van.

4.7.4 . The van was not left unattended or abandoned.

4.7.5 . The van was stopped in a location that did not pose any risk or obstruction to the public.

4.7.6 . There is no dispute regarding who the van belongs to.

4.7.7 . Plaintiffs did not receive a pre-deprivation notice.

4.7.8 . Plaintiffs are not in receipt of the legal basis for the deprivation of the van.

4.7.9 . Plaintiffs are not in receipt of any warrant, hearing or probable cause determination or any documentation related to the taking of the 1999 Dodge Van.

4.7.10 . The codes that Kelly hand delivered on 7/27/17 and stated are the reason for the taking of property are TCA 55-3-102, TCA 55-3-101, TCA 55-1-103, TCA 55-12-139, TCA 55-1-107, TCA 55-1-116, TCA 55-3-112, TCA 55-3-122.

4.7.11 . None of the codes provided allow for the taking of property without due process.

4.7.12 . None of the codes say anything about a "police hold".

4.7.13 . Each of these codes are for the privilege of operating a motor vehicle.

4.7.14 . Tracy is not in receipt of any facts or circumstances that would constitute privileged activity.

4.7.15 . Tracy has not been made aware of any facts or circumstances that would tend to show that she was engaged in for profit activity affecting a public interest.

4.7.16 . Plaintiffs are not in receipt of any legislative or constitutional provision authorizing the Defendants to act through a procedure called a "police hold".

## 4.8 . COMMERCE IS TRAFFIC

1  4.8.1 . Congress has power to regulate commerce.

2  4.8.2 . Commerce is Traffic.

3  4.8.3 . Plaintiffs do not use their property in interstate, foreign or intrastate commerce.

4  4.8.4 . Defendants refuse to return property unless Plaintiffs engage in commerce, specif-
5      ically by registering their van and obtaining a license.

6  4.8.5 . Registration of an automobile constitutes a privilege tax pursuant to TCA 5-8-
7      102(b) and TCA 55-4-101.

8  4.8.6 . Privilege taxes are taxes on (privileges) business, occupation, vocation or calling
9      pursuant to TCA 5-8-102(a).

10  4.8.7 . Plaintiffs are under threat and cannot leave their home without a drivers license
11      or identification card.

12  4.8.8 . 6 CFR 37 regulates every aspect of the Driver's License and Identification Card
13      including surface of the license, scannable technology on the back of the license,
14      documents required, application requirements and more.

15  4.8.9 . 6 CFR 37 is the executive implementation of Congress' 49 U.S.C. Chapter 303.

16  4.8.10 . The State of Tennessee is participating in the National Driver Register see TCA
17      55-50-407.

18  4.8.11 . Pursuant to 49 USC 30303, in order for the State of Tennessee to participate in
19      the NDR, the State must have notified the Secretary of Transportation of its inten-
20      tion to be bound by 49 USC 30304.

21  4.8.12 . The Department of Motor Vehicles prior to issuing a Drivers License must re-
22      quest from the Secretary of Transportation, information from the National Driver
23      Register pursuant to 49 U.S.C. 30304(e).

24  4.8.13 . Operating a motor vehicle is a privilege requiring payment of privilege taxes for
25      use of the publics roads when engaged in some business, occupation, vocation or
26      the like.

1    4.8.14 . An automobile required to pay a privilege tax is a motor vehicle.

2    4.8.15 . Pursuant to 49 USC 30301(5) "motor vehicle operator's license" means a license
3        issued by a State authorizing an individual to operate a motor vehicle on public
4        streets, roads, or highways.

5    4.8.16 . Congress is regulating all drivers license, both "commercial and noncommer-
6        cial".

7    4.8.17 . Congress is regulating all identification cards.

8    4.8.18 . Congress is powerless to regulate anything which is not commerce.

9    4.8.19 . Defendants refuse to return the Plaintiffs property, without any tax assessment
10       or prompt and meaningful hearing.

11   4.8.20 . Plaintiffs are not in receipt of any liability to pay privilege taxes for the use of
12       the roads when no interstate or intrastate commerce is involved.

13   4.8.21 . Plaintiffs do not use the roads for livelihood or gain, in interstate or intrastate
14       commerce therefore have no known legal duty to apply for and obtain any license.

15   4.8.22 . For Plaintiffs to apply for the license and registration and not use it for the busi-
16       ness designated would constitute intentional fraud on the state.

17   4.8.23 . For Plaintiffs to apply for a license and registration and not use it for the busi-
18       ness designated they would have to break one or more of the commandments
19       named in scripture.

### 4.9 . DAMAGES

20   4.9.1 . Continuing to this very day the Defendants have not returned the van.

21   4.9.2 . On or about Nov 14th, Bill was served with notice that his ex-wife was moving
22       the Oxford Mississippi chancery court to eliminate Bill's ability to pick-up his
23       daughters without a license based on the Defendants' 5/29/2017 actions.

24   4.9.3 . Continuing to this very day the Plaintiffs have not provided any process or proce-
25       dure to challenge the taking of the van.

26   4.9.4 . Continuing to this very day the Plaintiffs have not been able travel at liberty.

1    4.9.5 . Continuing to this very day the Plaintiffs have not been able to freely associate
2        with anyone without complete dependence on friends or family to help.

3    4.9.6 . Continuing to this very day the Plaintiffs work through conflicts with each other
4        over committing fraud on the State to obtain the "Negro Dred Scott jail pass"
5        known as a driver's license.

6    4.9.7 . Continuing to this very day the Plaintiffs work through conflicts with each other
7        over committing fraud on the state and applying for registration and paying the
8        privilege tax even though they have no intention to put the van to use in a for-profit
9        activity affecting a public interest.

10   4.9.8 . Continuing to this very day the Plaintiffs work through conflicts with each other
11       over letting the Defendants successfully compel the Plaintiffs to engage in intrastate
12       or interstate commerce and dishonestly engage in the revocable privilege related to
13       motor vehicle registration and driver's licenses outside of a judicial setting.

14   4.9.9 . Plaintiffs would have to break a number of laws of yhwh contained in the first
15       five books of scripture to complete State license and registration forms. (cf con-
16       tracts, witchcraft, fraud, treason)

17   4.9.10 . Continuing to this very day the Plaintiffs live in fear of how yhwh, the Almighty
18       of Abraham Isaac and Jacob, would immediately punish them for knowingly violat-
19       ing his commandments at Exodus 23:1 and Exodus 23:32.

20   4.9.11 . Continuing to this very day the Plaintiff's must risk threat of harassment, incar-
21       ceration, adverse possession of property and litigation just to locally buy food and
22       associate with family and friends.

23   4.9.12 . Plaintiff Bill Arnold has been taken out of the backseat of a car by Tennessee
24       Law Enforcement, and placed in the back of a patrol car for two hours for not hav-
25       ing a drivers license or government issued identification.

26   4.9.13 . Plaintiffs have been deprived of their intangible right of honest services because
27       the executive branch has not applied the law as written.

## 4.10 . RELIGIOUS OBJECTIONS

1  4.10.1 . Tracy Arnold has a religious objection against committing fraud on the state.

2  4.10.2 . Tracy Arnold has a religious objection against bearing false witness.

3  4.10.3 . Tracy Arnold has a religious objection to worshiping foreign and alien Elohim's.

4  4.10.4 . Tracy Arnold has a religious objection to the Social Security Number.

5  4.10.5 . Applying for and obtaining a driver's license and not using it for the business
6  designated would cause Tracy Arnold to commit fraud upon the state going directly
7  against Tracy Arnolds' religious objection to bearing false witness.

8  4.10.6 . Tracy Arnold would have to knowingly and intentionally lie about being en-
9  gaged in interstate or intrastate commerce in order to apply for and obtain a drivers
10  license which would cause her to violate her truly and sincerely held religious beliefs
11  specifically bearing false witness.

12  4.10.7 . Social Security promises to care for participating individuals in old age and
13  Tracy Arnold has a religious objection to putting her long term care in the hands of
14  social security because it would cause Tracy Arnold to go against her truly and sin-
15  cerely held religious beliefs to not worship foreign and alien Elohim.

16  4.10.8 . Tracy Arnolds long term care is in the Almightys hands.

17  4.10.9 . Social Security is controlled by Congress and if it not be commerce congress has
18  no concern with it.

19  4.10.10 . Scripture tells us not to get the mark of the beast and talks about being unable
20  to buy, sell or trade without that mark which Tracy Arnold truly and sincerely
21  beleives is the social security number.

## 4.11 . COMMERCE OR DRED SCOTT

22  4.11.1 . Congress is regulating the Driver's Licenses.

23  4.11.2 . Registration in Tennessee constitutes a privilege tax.

24  4.11.3 . Privilege taxes are required for the operation of motor vehicles.

1   4.11.4 . Privilege taxes are taxes on for profit activity affecting a public interest.

2   4.11.5 . Licenses are tax receipts for a business, occupation, vocation or the like.

3   4.11.6 . Licenses are also police regulations on business, occupation, vocation or the like.

4   4.11.7 . To take out a license and not use it for the business designated constitutes a
5      fraud upon the State.

6   4.11.8 . Tracy Arnold will be stopped and seized for travelling without her pass/permis-
7      sion to leave her home.

8   4.11.9 . Tracy Arnold is threatened with jail for not displaying her pass for travel.

9   4.11.10 . It is alleged that without the pass for travel Tracy Arnold cannot use the roads.

10   4.11.11 . Tracy Arnold is not free to go wherever she so pleases without molestation.

11   4.11.12 . All races must carry pass or passport in order to go wherever they please.

12   4.11.13 . Tracy Arnold is not free to use the roads that the public have an absolute right
13      to.

## 5. COUNT 1 - VIOLATION OF THE FOURTH AMENDMENT PROHIBITION AGAINST UNREASONABLE SEIZURES PURSUANT TO 42 U.S.C. 1983

### AGAINST LARRY WILBANKS IN HIS INDIVIDUAL AND OFFICIAL CAPACITY, WARRENS TOWING, TIM KELLY IN HIS OFFICIAL AND INDIVIDUAL CAPACITY AND THE CITY OF CRUMP

14   5.1 . Plaintiffs repeat and re-alleges paragraphs _____ above as if fully set forth
15     herein.

16   5.2 . The Fourth Amendment prohibits "unreasonable searches and seizures of property
17     by the government."

18   5.3 . A taking of property that may be lawful at its inception may nevertheless violate
19     the Fourth Amendment if the manner of its execution or its duration unreasonably
20     infringes the possessory interests protected by the Fourth Amendment.

1   5.4 . Plaintiffs have a strong possessory interest in the van as it is necessary to perform
2         their duties in their daily life.

3   5.5 . Plaintiffs asserted their possessory interest by communicating with each defendant
4         on multiple occasions about returning their property.

5   5.6 . Defendants effected a complete infringement on Plaintiffs possessory interest by
6         denying Plaintiffs the use of their property for over 1 year and continuing to the
7         present.

8   5.7 . Defendants denied the Plaintiffs the use of their property without any hearing, trial,
9         warrant or probable cause.

10   5.8 . Defendants denied the Plaintiffs the use of their property without informing them
11         of how to challenge the taking of their property.

12   5.9 . Defendants told Plaintiffs that they could have their property back if they would
13         pay a privilege tax on their property ie registration.

14   5.10 . The only reason for the taking of the van was to compel commerce. Specifically,
15         the van was taken to force the Arnolds to pay a privilege tax for the without any ev-
16         idence that the Plaintiffs are using the roads for profit and affecting the public.

17   5.11 . Even if Wilbanks had probable cause for taking the van, all charges were dis-
18         missed.

19   5.12 . Following the initial stop on May 29th 2017, without finding any for profit activ-
20         ity affecting a public interest, it was unreasonable for Larry Wilbanks to Jail Tracy
21         Arnold.

22   5.13 . Following the initial stop on May 29th 2017,without finding any for profit activ-
23         ity affecting a public interest, it was unreasonable for Larry Wilbanks to order Ran-
24         dall Warren to Tow Bill Arnolds property and "hold" the property.

25   5.14 . Following the dismissal of all charges on June 13th 2017, the van had no eviden-
26         tiary value in any court proceeding.

5.15 . Following the dismissal of all charges on June 13th 2017, the Defendants continued possession of the Plaintiifs' property became unreasonable.

5.16 . Warrens Towing is the custodian of property taken by Crump Police.

5.17 . Larry Wilbanks, Tim Kelly and the City of Crump drives the decision on when to release the property.

5.18 . The City of Crump was noticed of the Plaintiffs right of possession of the property, dismissal of all charges signed by the General Sessions Judge in Savannah Tennessee, that Bill Arnold and Tracy Arnold were not in receipt of the lawful basis for the taking of the property and that the property has not been released.

5.19 . At no point did the City of Crump or Tim Kelly ask Defendants Larry Wilbanks or Randall Warren to release the property.

5.20 . Defendants knew or should have known that they could not take property when all charges are dismissed without due process, probable cause, warrant or seizure and forfeiture procedure.

5.21 . By taking property and failing to take any action to release the property for over 1 year after the property was taken and all charges were dismissed, Defendants infringed on Bill Arnold and Tracy Arnold's right to be free from unreasonable seizures.

5.22 . As a direct and proximate result of Plaintiffs loss of property, Plaintiffs damages incurred include but are not limited to loss of property continuing to this day, humiliation, marital conflicts, anxiety, emotional distress, missed medical appointments, struggles to get food, inability to work, and inability to congregate and inability to exercise their right to Liberty.

## 6. COUNT 2 - VIOLATION OF THE FIFTH AMENDMENT'S PROCEDURAL DUE PROCESS GUARANTEE PURSUANT TO 42 U.S.C. 1983

### AGAINST LARRY WILBANKS AND TIM KELLY IN THEIR INDIVIDUAL AND OFFICIAL CAPACITY AND WARRENS TOWING AND THE CITY OF CRUMP

6.1 . Plaintiffs Tracy Arnold and Bill Arnold repeat and re-alleges paragraphs _____ above as if fully set forth herein.

6.1.1 . There are two steps to a procedural due process analysis: the court must first determine there was a deprivation of a protected liberty or property interest, and if so, the Court assesses what process was due.

6.2 . The Due Process Clause also encompasses a third type of protection, a guarantee of fair procedure. The deprivation by state action of a liberty interest is not in itself unconstitutional; what is unconstitutional is the deprivation of such an interest without due process of law. Procedural due process rules are mean to protect persons not from the deprivation, but from the mistaken or unjustified deprivation of life, liberty or property.

6.3 . The Fifth Amendment guarantees the right to be free from the taking of property by the government except where such deprivation of property is accomplished by due process of law, including notice of the deprivation and a prompt and meaningful opportunity to be heard.

6.4 . In the context of police taking property, due process requires that police give the owner of the property written notice at the time of the taking.

6.5 . In the alternative, even if due process does not require police to provide written notice at the time of the taking, due process requires written notice be provided within a timely manner after the initial taking.

6.6 . In the alternative, even if due process does not require police to provide written notice at the time of the taking, due process requires some form of notice explaining the grounds and the procedure for challenging the taking of property.

6.7 . Additionally, due process requires a prompt and meaningful hearing as to the legality of the deprivation.

1    6.8 . To determine whether a constitutional violation has occurred, it is necessary to ask
2         what process the State provided and whether is was constitutionally adequate.

3    6.9 . It would be unreasonable to think after over 1 year it would be possible to provide
4         a "prompt and meaningful hearing" as to the legality of the deprivation.

5    6.9.1 . Procedural Due Process requires there to be procedures for challenging the Defen-
6         dants actions.

7    6.10 . Defendants knew or should have known that there was no judicial determination
8         requiring that the Plaintiffs pay a privilege tax on their property.

9    6.11 . Defendants knew or should have known that in order to take and keep property,
10        when charges were dismissed, requires a "prompt and meaningful hearing".

11   6.12 . At no point were Plaintiffs provided with a meaningful opportunity to be heard as
12        to the lawfulness or legality of the taking of the property.

13   6.12.1 . Due Process protects Tracy Arnold's right to not be coerced except by lawful ju-
14        dicial power.

15   6.13 . By failing to provide Tracy Arnold and Bill Arnold any notice regarding the
16        proper process for obtaining the property, failing to provide written notice of any
17        kind and failing to provide Tracy and Bill Arnold with a meaningful opportunity to
18        be heard, Larry Wilbanks and the City of Crump deprived them of their Fifth
19        Amendment guarantee of due process of law.


## 7. COUNT 3 - 42 U.S.C. 1983 MONELL CLAIM AGAINST DEFENDANT CITY OF CRUMP

20   7.1 . Plaintiffs Tracy Arnold and Bill Arnold repeat and re-alleges paragraphs
21        _____ above as if fully set forth herein.

22   7.2 . The Violations of Plaintiffs constitutionally secured rights by Larry Wilbanks and
23        Randall Warren were caused by the policies and customs and ratification of the
24        City of Crump as described above.

1    7.3 . The Mayor of Crump, Glen Spencer, an official with final decision making author-
2         ity, ratified the behavior and conduct of the Defendant Larry Wilbanks; The City of
3         Crump Alderman, Mayor and Chief of Police each were certified mailed notice of
4         the taking of the property and that all charges were dismissed, sent FOIA requests
5         requesting the legality of the taking and were noticed that there were no pending
6         charges. Each of the Alderman, Mayor and Chief of Police ratified the illegal action
7         of taking property without due process of law or following state law.

8    7.4 . The existence of a custom of tolerance and acquiescence to federally secured rights
9         violations occurred by the City of Crump ratifying the actions of Randall Warren
10        and Larry Wilbanks.

11   7.5 . Moreover, the Mayor and Alderman of the City of Crump allowed the continued
12        "police hold" of the Plaintiffs property and ratified Larry Wilbanks taking property
13        without probable cause, a warrant, lawful basis, authorization for the tow and
14        without providing the Plaintiffs any documentation related to the taking of their
15        property or how to challenge the taking of their property. The City of Crump knew
16        all charges were dismissed and knew or should have known that there was no judi-
17        cial determination that the Plaintiffs property was subject to the payment of a privi-
18        lege tax.

19   7.6 . The City of Crump failed to inquire into whether the Plaintiffs property was in fact
20        a motor vehicle and whether the property is in fact subject to privilege taxation, and
21        instead attempted to compel taxation on the plaintiffs without even attempting to
22        prove liability. The City took no steps to remedy the Plaintiffs and took no steps to
23        correct policeman Larry Wilbanks by requiring that he get a hearing to find proba-
24        ble cause and to obtain a warrant or in the alternative to release the property. In-
25        stead the City approved Larry Wilbanks actions.

26   7.7 . The City of Crumps ratification and acceptance of Larry Wilbanks and Randall
27        Warrens actions continues to this day. The City of Crump has continued to shield

1   the Defendants Larry Wilbanks and Randall Warrens actions notwithstanding the

2   crimes they committed against Tracy Arnold and Bill Arnold.

## 8. COUNT 4 - CONSPIRACY AGAINST RIGHTS TO LIBERTY PURSUANT TO 42 U.S.C 1983

### AGAINST LARRY WILBANKS IN HIS INDIVIDUAL AND OFFICIAL CAPACITY, TIM KELLY IN HIS INDIVIDUAL AND OFFICIAL CAPACITY AND WARRENS TOWING

3   8.1 . Plaintiffs repeat and re-alleges paragraphs _____ above as if fully set

4   forth herein.

5   8.2 . The individual Defendants reached an agreement among themselves to not return

6   Plaintiffs property by continuing something called a "police hold" on the Plaintiffs

7   property.

8   8.3 . Defendants agreed to not allow for the release of the property without the property

9   having paid the privilege tax. Moreover, the Individual Defendants acted in concert

10   to prevent the Plaintiff from being informed of the lawful basis for the taking of

11   their property and how to challenge the taking of their property.

12   8.4 . Each Defendant furthered the conspiracy to violate Plaintiffs constitutional and

13   civil rights by willfully and deliberately failing to provide a lawful hearing and fail-

14   ing to obtain a warrant for the taking of the property, thereby depriving the Plain-

15   tiffs the opportunity to be heard and the opportunity to prove beyond a reasonable

16   doubt that the property is not subject to privilege taxation which would have led to

17   having their property returned.

18   8.5 . In this manner, the individual Defendants Larry Wilbanks and Randall Warren

19   have conspired to accomplish an unlawful purpose by unlawful means.

20   8.6 . In furtherance of the conspiracy, Randall Warren and Larry Wilbanks committed

21   overt acts and was otherwise willful participants in joint unlawful activity.

22   8.7 . As a direct and proximate result of the overt acts referenced above the Plaintiffs in-

1     curred injuries, including but not limited to, loss of normal interactions with soci-
2     ety, humiliation, fear, pain, loss of property, loss of half of their time with their
3     daughters and emotional distress.

4     8.8 . The misconduct described above in the Count was taken with malice, willfulness
5     and reckless disregard to the Plaintiffs rights.

## 9. COUNT 5 - RANDALL WARREN AND LARRY WILBANKS STATE LAW CLAIM – CONSPIRACY

6     9.1 . Plaintiffs repeat and re-alleges paragraphs _____ above as if fully set
7     forth herein.

8     9.2 . The Defendants Officer and Randall Warren acting in concert to accomplish an un-
9     lawful purpose by unlawful means - namely, the violation of Plaintiff's rights to not
10     having property taken without due process of law and deprived of other constitu-
11     tionally secured rights as described above.

12     9.3 . In furtherance of the conspiracy, the Defendants committed overt acts and were
13     otherwise willful participants in joint activity, specifically Randall Warren and
14     Larry Wilbanks knew there was no lawful hearing, no probable cause determina-
15     tion, no warrant and they knew on June 14th 2017 that all charges related to the
16     taking of the property were dismissed and that all costs were taxed to the state. De-
17     fendants knew or should have known that there were no pending actions related to
18     the property.

19     9.4 . The misconduct described in this Count was undertaken with reckless disregard to
20     the Plaintiffs constitutionally secured rights and other rights including their right to
21     property and their right to liberty which is the second most valuable right next to
22     the right to life.

23     9.5 . The misconduct described in this Count was undertaken with malice, willfulness
24     and reckless disregard to the Plaintiffs rights by Defendant Larry Wilbanks disre-

1   garding Plaintiffs rights to due process by failing to show up to court and continu-
2   ing the taking of the property, disregarding the fact that it is a judge who gives a
3   probable cause determination and Wilbanks is not permitted to make a probable
4   cause determination and impose punishment without judicial review. Wilbanks and
5   Warren took it upon themselves to determine Plaintiffs liabilities and duties without
6   any judicial determination or review. Defendants knew or should of known that
7   they are not permitted to act as a judge and impose punishment without due
8   process.

9   9.6 . As a proximate result of the Defendants' conspiracy, Plaintiffs damages accrued in-
10   clude but are not limited to loss of normal interactions with society, humiliation,
11   fear, pin, stress, time, loss of property for over a year, emotional distress and loss of
12   half of their time with their daughters.


## 10. COUNT 7 - VIOLATION OF THE THIRTEENTH AMENDMENT RIGHT TO BE FREE FROM INVOLUNTARY SERVITUDE
### AGAINST ALL DEFENDANTS

13   10.1 . Plaintiffs repeat and re-alleges paragraphs _____ above as if fully set
14   forth herein.

15   10.2 . Defendants City of Crump and Larry Wilbanks on May 29th 2017 took property
16   from the plaintiffs in order to compel plaintiffs to put their property to use as an in-
17   strumentality of commerce and to pay two privilege taxes, specifically registration
18   and a drivers license.

19   10.3 . Defendants are attempting to coerce Plaintiffs into getting permission to use the
20   roads for interstate or intrastate commerce, specifically by attempting to compel li-
21   censing.

22   10.4 . Plaintiffs were not engaged in any for profit activity affecting a public interest and
23   were not using the roads as a place of business, occupation, vocation or the like.

10.5 . Plaintiffs were not engaged in any activity for which a privilege tax could have been owed.

10.6 . Plaintiffs allege that because the registration constitutes a privilege tax and the drivers license (a tax receipt for a privilege) is required to merely use the roads, that the Plaintiffs having property taken and Tracy Arnold jailed is either a result of Defendants attempting to compel commerce or resurrecting the Dred Scott decision and applying it to all races "equally" and not just the "slave races" as Chief Justice Taney put it

10.7 . Use of the roads when no interstate or intrastate commerce is involved yet demand a license using slight changes in terms is to apply descriptions from Dred Scott of the badges and incidents of slavery. Blatant discrimination by unconstitutional application of general revenue tax on commerce against men and women using the roads not involved in a privilege is to treat them as an inferior class, and to subject them to strict police regulations, drawing a broad line of distinction between the citizen and the slave races and is also a provision by which any negro, Indian, or mulatto servant who was found wandering out of the town or place to which he belonged without a written pass such as is therein described was made liable to be seized by anyone, and taken before the next authority to be examined and delivered up .... to pay the charge which had accrued thereby. And..... provides that if any free negro shall travel without such pass, and shall be stopped, seized, or taken up, he shall pay all charges arising thereby.

10.8 . Involuntary servitude involves a condition of having some of the incidents of slavery.

10.9 . Defendants, under the guise of public safety via the police power are requiring a license to engage in a "privilege" regulated by Congress and attempting to compel the plaintiffs to engage in for profit activity affecting a public interest against their

1  will and without just compensation therefore stripping them of their thirteenth
2  amendment protection to be free from involuntary servitude and slavery.

3  10.10 . Defendants City of Crump and Larry Wilbanks completely disregarded the thir-
4  teenth amendments prohibition against involuntary servitude and slavery.

5  10.11 . The Thirteenth amendment abolished involuntary servitude and slavery.

6  10.12 . As a result of the Plaintiffs failure to carry badges and incidents of slavery or en-
7  gage in interstate or intrastate commerce, Plaintiffs property was taken and that
8  taking continues to this day which has resulted in further damages listed above also
9  Tracy Arnold was jailed  on May 29th, 2017.

## 11. COUNT 8 - VIOLATION OF THE FIRST AMENDMENT RIGHT TO FREE EXERCISE OF RELIGION

### AGAINST ALL DEFENDANT'S

10  11.1 . Plaintiffs repeat and re-alleges paragraphs _____ above as if
11  fully set forth herein.

12  11.2 . Defendants City of Crump, Larry Wilbanks and Randal Warren refused to return
13  Plaintiffs property after all 4 alleged charges against Tracy Arnold had been dis-
14  missed.

15  11.2.1 . Plaintiffs' sincerely held religious beliefs prevents her from committing fraud on
16  the State of Mississippi, lying, worshiping foreign and alien lawmakers, taking the
17  mark of the beast and putting her future into hands other than the Almighty's.

18  11.3 . The Defendants through a custom and habit called a 'police hold' refuse to release
19  Plaintiff's property without two conditions being completed by the Plaintiff's, which
20  requires that Plaintiffs pay a privilege tax on their property and Plaintiff's success-
21  fully apply for and obtain a 'driver's license'.

22  11.3.1 . The Executive Branch of Tennessee, misapplying the law as written and enforc-

1   ing privilege tax laws on all people regardless of whether their activity is privileged
2   imposes a substantial burden on Plaintiffs free exercise of religion by attempting to
3   coerce her to go against the Almighty and choose between committing fraud on the
4   State by taking out a license and not using it for the business designated or paying
5   substantial penalties to the government.

6   11.4 . The license furthers no compelling governmental interest by compelling the use of
7   a social security number when Tracy Arnold is religiously barred from the benefit
8   program which is voluntary.

9   11.5 . The license furthers no compelling governmental interest in compelling Tracy
10   Arnold  to violate scripture to commit fraud on the state.

11   11.6 . Plaintiffs exercise of religion has been prohibited by the Defendants by threat of
12   incarceration, actual incarceration, actual property loss, threat of property loss for
13   using the roads to travel to religious services, traveling for holy days, ministering
14   the word, traveling to help neighbors or traveling to help widows and orphans.

15   11.7 . Plaintiffs payment of a privilege tax does not reduce any risk to the public. Li-
16   censes are mere tax receipts and police regulations for the businesses, occupations,
17   vocations and callings.

18   11.8 . In the alternative of requiring licenses to allegedly pay for the roads, gas taxes
19   could be increased. Plaintiffs should not be required to obtain licenses for some
20   privilege when there is no profit activity affecting a public interest taking place.

21   11.9 .  The least restrictive alternative would be for the Defendants to apply the law as
22   written in black letter law and to obey controlling court decisions from the United
23   States Supreme Court.

## CONCLUSION

24   Wherefore, Plaintiff requests that this Honorable Court:

25   • Declare Defendants' taking of Plaintiffs property to be unlawful;

1   • Declare Defendants' actions to violate the Fourth and Fifth Amendments to the
2   Constitution;
3   • Declare Defendants actions to violate the First Amendment to the Constitution;
4   • Declare Defendants' actions to violate the Thirteenth Amendment to the Constitu-
5   tion;
6   • Order the Defendants' to return to Tracy Arnold and Bill Arnold the 1999 Dodge
7   Van;
8   • Award Bill Arnold and Tracy Arnold $300,000 in compensatory damages;
9   • Award Bill Arnold and Tracy Arnold $600,000 in punitive damages;
10   • Award Bill Arnold and Tracy Arnold $500 per day for each day the property was
11   taken;

*11/16/2018*

Tracy Arnold
1400 Harris Road Adamsville Tennessee
email:Tracy@arnoldnet.org
Telephone:(423)529-4335

*11/16/2018*

Bill Arnold
1400 Harris Road Adamsville Tennessee 38310
email:Bill@arnoldnet.org
Telephone:(423)529-4323

*Levi Thurston  11-16-2018*

*11/16/2018*

*11/16/2018*

Witnesses

"... ... (A)t the mouth of two witnesses, or at the mouth of three witnesses, shall the matter be established." Deuteronomy 19:1