RECEIVED BY

*Thomas M. Gould, Clerk*
*U.S. District Court*
*W.D. OF TN, Jackson*

FEB 11 2019

# AT THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF TENNESSEE

| | |
|---|---|
| Tracy Arnold, Bill Arnold<br>    Plaintiffs | Cause # 1:18-cv-01227-STA-egb |
| vs. | Jury NOT requested: |
| City of Crump, Larry Wilbanks<br>(in his Official and Individual Capacity),<br>Tim Kelly (in his Official and Individual<br>Capacity), Glen Spencer (in his Official and<br>Individual Capacity), Randall Warren<br>    Defendants | *"Deuteronomy 25:1: If there be a controversy between men, and they come unto judgment, that the judges may judge them; then they shall justify the righteous, and condemn the wicked."* |

## PLAINTIFF'S FIRST AMENDED COMPLAINT

### 1. PARTIES

1.1. Plaintiff, Bill Arnold (hereinafter referred to as "Bill"), a citizen of the Kingdom of yhwh, sojourning at 1400 Harris Road Adamsville, Tennessee.

1.2. Plaintiff, Tracy Arnold (hereinafter referred to as "Tracy"), a citizen of the Kingdom of yhwh, sojourning at 1400 Harris Road Adamsville, Tennessee.

1.3. Defendant, City of Crump (hereinafter referred to as "the City"), a Municipal Corporation of the State of Tennessee, may be served by delivering a copy of the summons and the complaint to the chief executive officer and final policy maker, Ricky Tuberville, at 3020 US Highway 64 Crump, Tennessee 38327.

1.4. Defendant, Glen Spencer (hereinafter referred to as "Spencer"), former City of Crump Mayor, at all times relevant to this suit was employed by the City as the Mayor, and a citizen of the State of Tennessee, may be served by delivering a copy of the summons and the complaint at 3020 US Highway 64 Crump, Tennessee 38327.

1.5. Defendant, Tim Kelly (hereinafter referred to as "Kelly"), Crump Chief of Police, at all times relevant to this suit was employed by the City as the Chief of Police, and

1     citizen of the State of Tennessee, may be served by delivering a copy of the sum-

2     mons and the complaint to the Crump Police Department, at 3020 US Highway 64

3     Crump, Tennessee 38327.

4  1.6. Defendant, Larry Wilbanks (hereinafter referred to as "Wilbanks"), former Crump

5     Policeman, at all time relevant to this suit was employed by the City as a policeman,

6     and a citizen of the State of Tennessee, may be served with process at 300 Industrial

7     Park Dr Selmer, Tennessee 38375.

8  1.7. Defendant, Randall Warren (hereinafter referred to as "Warren"), an individual, at

9     all times relevant to this suit is the owner of Warren's Towing, and a citizen of the

10    State of Tennessee, may be served with process at 2305 US Highway 64 Adamsville,

11    Tennessee 38310.

## 2. JURISDICTION AND VENUE

13  2.1. This action is brought pursuant to 42 U.S.C § 1983, 1985(3) and 1986, the First,

14    Fourth, Fifth, Thirteenth, and the Fourteenth Amendments to the United States

15    Constitution.

16  2.2. Jurisdiction is founded upon 28 U.S.C. § 1331 and 28 U.S.C. § 1343(a)(3) and (4)

17    in that this is an action to redress the deprivation, under color of law, of the rights

18    secured by the Constitution of the United States, and by federal law. "The district

19    courts shall have original jurisdiction of all civil actions arising under the Constitu-

20    tion, laws, or treaties of the United States."

21  2.3. In connection with the acts, practices and violations alleged below, the City,

22    Spencer, Kelly, Wilbanks, and Warren (hereinafter referred to as "Defendants"),

23    have each, either directly or indirectly violated clearly established constitutionally

24    secured rights, as well as statutory and common law duties owed to each Plaintiff.

25  2.4. Venue is proper in this Court under 28 U.S.C § 1391(b)(1)(2) because the Defen-

1    dants reside in this judicial district, plus the events occurred and property was taken
2    within this district.

3  2.5. The unlawful acts and practices alleged herein occurred within the interior boarders
4    the City of Crump, County of Hardin, Tennessee, which is within this judicial dis-
5    trict.

6                          3. INTRODUCTION

7  3.1. From June 2017 and continuing to this day, the Defendants caused Bill and Tracy
8    (hereinafter referred to as "Plaintiffs") to be deprived of the Arnold's family van, a
9    White 1999 Dodge van (hereinafter referred to as "the van")  without due process
10    of law and under color of law. As a result of the Defendants actions, Plaintiffs have
11    been deprived of their property for over one year which resulted in multiple other
12    damages listed below. In spite of the fact that it was made clear to the Defendants
13    that all charges against Tracy were dismissed with costs taxed to the state, the De-
14    fendants continued to refuse to release the property.

15  3.2. From June 2017 continuing to this day, the City through its final policy maker,
16    Spencer, ratified defendants Kelly, Wilbanks and Warren's actions by refusing to act
17    to have Plaintiff's property returned, and further conditioning possing the van by
18    attempting to coerce Plaintiffs to apply for a privilege and pay a privilege tax on
19    their property as the only means to have the van returned.

20  3.3. From June 2017 continuing to this day, the Defendants have continued to deprive
21    the Plaintiffs of property without due process of law, without probable cause, with-
22    out warrant, without lawful basis and without informing the Plaintiffs of the lawful
23    bases for the taking and how to challenge the taking of their property.

24  3.4. From June 2017 continuing to this day in spite of FOIA requests, Defendants have
25    not provided the Plaintiff any authorization to tow their van such as a tow in form,

1    seizure form, lawful hearing notice or any other documentation regarding the tak-

2    ing of the property. The only response to the FOIA requests submitted by Plaintiffs

3    to the City are copies of the tickets and the dismissal of all charges with costs taxed

4    to the state.

5  3.5. From July 2017 and continuing to this day, the Defendants knew that there was no

6    lawful hearing and that all charges had been dismissed.

7                 **4. FACTS COMMON TO ALL COUNTS**

8                      4.1. STOPPED AND SEIZED

9  4.1.1. On May 29, 2017, Tracy was traveling to the Savannah Tennessee Park in the van

10    with 5 daughters and 1 niece.

11  4.1.2. Tracy was exercising her right to be free from involuntary servitude.

12  4.1.3. Tracy was exercising her right to liberty and her right to freely associate.

13  4.1.4. Wilbanks, driving a Crump police motor vehicle, pulled behind the van.

14  4.1.5. Wilbanks then engaged emergency lights.

15  4.1.6. Tracy stopped the van on the Valero Gas Station lot at 4010 U. S. Highway 64,

16    Crump, Tennessee.

17  4.1.7. Wilbanks stopped Tracy for not displaying a receipt for the payment of a privilege

18    tax on the back of the van.

19  4.1.8. Wilbanks asked Tracy for a driver's license and registration.

20  4.1.9. Tracy did not have a driver's license.

21  4.1.10. Plaintiffs did not register the van.

22  4.1.11. Plaintiffs have no known legal duty to apply for a privilege license on the van.

23  4.1.12. Plaintiffs have no known legal duty to pay a privilege tax on the van.

24  4.1.13. Tracy explained she was not engaged in any for-profit activity affecting a public

25    interest for which a privilege tax was due.

1   4.1.14. Wilbanks stated Tracy has to have a driver's license and registration.

2   4.1.15. Wilbanks told Tracy to call someone to pick up the 6 little girls.

3   4.1.16. About a minute or two later Wilbanks told Tracy he was going to call DCS to

4         get the girls because he doesn't have time to wait.

5   4.1.17. Tracy asked for Wilbanks' supervisor.

6   4.1.18. Wilbanks stated he was the supervisor.

7   4.1.19. Tracy asked for Wilbanks' to call his superior.

8   4.1.20. Wilbanks immediately responded that nobody was available.

9   4.1.21. Tracy said that Bill will be there in 15 minutes.

10   4.1.22. Wilbanks stated if Bill does not have a driver's license and registration then Bill

11         can not pick up their daughters and neice.

12   4.1.23. Bill was able to have two friends pick up the girls in two separate automobiles

13         for this not privileged help.

14   4.1.24. Tracy helped put the girls into the automobiles.

15   4.1.25. Tracy secured the van.

16   4.1.26. Wilbanks handcuffed Tracy.

17   4.1.27. Wilbanks placed Tracy into the back to the Crump Police motor vehicle.

18   4.1.28. Tracy was seized, stopped and taken up for traveling without a pass for travel.

19                              4.2. PROPERTY TAKEN

20   4.2.1. Warren of Warren's Towing arrived with his tow truck, a motor vehicle.

21   4.2.2. Wilbanks ordered Warren to take the van.

22   4.2.3. Tracy told both Wilbanks and Warren she does not consent to them taking the

23         van.

24   4.2.4. Warren towed the van.

1 | 4.3. TAKEN TO JAIL

2 | 4.3.1. Wilbanks transported Tracy against her will and over her objection to the Hardin
3 | County jail.

4 | 4.3.2. At the jail, Tracy requested to be taken before a magistrate immediately.

5 | 4.3.3. Wilbanks laughed at Tracy's request.

6 | 4.3.4. Wilbanks told the jail staff that he was going to charge Tracy with false identifica-
7 | tion.

8 | 4.3.5. Tracy is not aware of any evidence or incident where she used false identification
9 | for the purpose of obtaining goods, services or privileges that she was not otherwise
10 | entitled to.

11 | 4.3.6. Tracy asked Wilbanks what was he going to do.

12 | 4.3.7. Wilbanks told Tracy it was none of her business as he was not talking to her.

13 | 4.3.8. Tracy stated she has the right to know the nature and cause of the accusations
14 | against her.

15 | 4.3.9. Wilbanks told Tracy that he doesn't have to tell her anything and that he can
16 | bring an action against her for up to 3 years.

17 | 4.3.10. Tracy was put in a holding cell for approximately 6 hours.

18 | 4.3.11. Tracy was released on her own recognizance without having any communication
19 | with a magistrate or judge.

20 | 4.3.12. Tracy was not provided any documentation related to the towing of the van.

21 | 4.3.13. Tracy was not provided any documentation or information on how to challenge
22 | the taking of the van.

23 | 4.4. "POLICE HOLD" ON THE VAN (PRIOR TO HEARING)

24 | 4.4.1. On May 30, 2017, Plaintiffs went to Warrens Towing to pick up the van.

25 | 4.4.2. Warren said he could not release the van as Wilbanks placed a 'hold' on the van.

1  4.4.3. Tracy requested Warren to provide a copy of any documentation of a "police
2      hold" on the van.
3  4.4.4. Tracy requested Warren to provide her with a copy of any documentation related
4      to the towing of the van.
5  4.4.5. Warren said he did not have paperwork he could provide.
6  4.4.6. Warren said that maybe Wilbanks had something.
7  4.4.7. Tracy called the City Police Department and requested any documentation regard-
8      ing the taking of the van.
9  4.4.8. Tracy was told that she would need to talk to Wilbanks.
10 4.4.9. On or about May 30, 2017, Wilbanks called Tracy to tell her that she could only
11     have the van back if she registers it.
12 4.4.10. TCA 5-8-102(b) provides that registration constitutes a privilege tax.
13 4.4.11. Wilbanks also told Tracy that only a licensed driver can pick it up.
14 4.4.12. Plaintiffs are not in receipt of any judicial determination that they are liable for
15     the payment of a privilege tax.

16              4.5. SAVANNAH TENNESSEE GENERAL SESSIONS COURTHOUSE

17 4.5.1. On June 2, 2017, at supposed arraignment, Tracy moved the court for a prelimi-
18     nary hearing.
19 4.5.2. On June 13, 2017, at preliminary hearing, Wilbanks did not appear in court.
20 4.5.3. On June 13, 2017, at preliminary hearing, none of the Defendants appeared in
21     court.
22 4.5.4. Prosecution did not move for a continuance.
23 4.5.5. The General Sessions Judge dismissed all charges with costs taxed to the state.
24 4.5.6. Tracy moved the court to release the van.

1  4.5.7. General Sessions Judge Daniel Smith, informed Tracy, that he had "nothing to do
2      with that."

3                    4.6. POST JUDGMENT ATTEMPTS TO PICK UP THE VAN

4  4.6.1. After the hearing, the Plaintiffs attempted to pick up the van from Warrens Tow-
5      ing.

6  4.6.2. Bill handed to Warren a copy of the judgment dismissing all charges with costs
7      taxed to the state and signed by Judge Daniel Smith.

8  4.6.3. Warren said he still can not release the van without Wilbanks' approval.

9  4.6.4. Bill asked if the City Mayor or Chief of Police would be sufficient.

10  4.6.5. Warren said he "supposed it would".

11  4.6.6. Bill went to Crump City Hall.

12  4.6.7. The City of Crump Secretary said she would give Bill's information to Mayor
13      Spencer.

14  4.6.8. On or about June 14, 2017, Spencer did call Bill.

15  4.6.9. Bill informed Spencer of the dismissal of all charges.

16  4.6.10. Spencer stated he would call Bill back after he contacts the City's Attorney.

17  4.6.11. On or about June 15, 2017, Spencer called Bill to state that Bill would need to
18      register the van to get it back.

19  4.6.12. On or about June 15, 2017, Warren called Bill to state that Wilbanks refused to
20      release the hold on the van.

21  4.6.13. On June 27, 2017, the Plaintiffs sent by certified mail a copy of the judgment,
22      proof the van belongs to Bill and a demand letter for the return of the van to the
23      City, Wilbanks and Warren.

24  4.6.14. The June 27, 2017, letter included a notice of a $500 per day charge until the
25      van was returned to the Plaintiffs.

1   4.6.15. On July 27, 2017, the Plaintiffs called the City to speak with the Chief of Police,
2       Kelly.

3   4.6.16. Kelly told Plaintiffs he was aware of the situation.

4   4.6.17. Kelly stated the others would not be happy that he was talking to the Plaintiffs.

5   4.6.18. Kelly told Bill if he would register the van then Kelly himself would take Bill to
6       pick the van up.

7   4.6.19. Kelly stated it was seized because it was on the roads.

8   4.6.20. Bill asked when was the lawful hearing for the seizure.

9   4.6.21. Kelly then stated the van was not seized.

10   4.6.22. Kelly stated again that the van could be picked up if it was registered.

11   4.6.23. After the phone call with Kelly, the Plaintiffs certified mailed a copy of the June
12       27th, 2017, mailing to each of the City Alderman.

13   4.6.24. The July 27th, 2017 mailing included an updated bill for $500 per day until the
14       van was returned to the Plaintiffs.

15   4.6.25. Later on July 27th, 2017, Kelly hand delivered to Bill a copy of Tennessee Code
16       Statutes and the dismissed tickets made by Wilbanks.

17   4.7. PLAINTIFFS ATTEMPT TO OBTAIN LEGAL BASIS AND AUTHORITY FOR TAKING AND
18       KEEPING THEIR PROPERTY

19   4.7.1. On October 3rd, 2017, Plaintiffs submitted their first FOIA request to the City.

20   4.7.2. The FOIA request asked for all records relating to the taking of the van.

21   4.7.3. On October 12th, 2017, Plaintiffs received a FOIA response from the City Attor-
22       ney, Dale Condor Jr., which included a copy of the alleged citations and the judg-
23       ment that dismissed all charges.

24   4.7.4. On October 23rd, 2017, Plaintiffs submitted a second FOIA request to the City.

25   4.7.5. The second FOIA request asked for the tow bill, dispatch records, seizure docu-
26       ments, tow-in report, and any written document related to a police hold on the van.

4.7.6. On or about October 25th, 2017, Plaintiffs received a FOIA response from the City attorney, Dale Condor Jr., stating there were no additional documents related to the van.

4.7.7. The Plaintiffs are not in receipt of any forfeiture or seizure forms being filed by the Defendants.

### 4.8. COLOR OF LAW

4.8.1. Plaintiffs did not receive a pre-deprivation notice.

4.8.2. Plaintiffs are not in receipt of the legal basis for the deprivation of the van.

4.8.3. Plaintiffs are not in receipt of any warrant, hearing or probable cause determination or any documentation related to the taking of the van.

4.8.1. There is no Tennessee law providing the authority to "hold" property when there is no probable cause.

4.8.2. There is no Tennessee law providing the authority to "hold" property without some process and procedure due to the Plaintiffs.

4.8.3. There is no Tennessee law providing the authority to "hold" property without an active court case involving the property that was taken.

4.8.4. The codes that Kelly hand delivered on July 27th, 2017, and stated are the reason for the taking of property are TCA 55-3-102, TCA 55-3-101, TCA 55-1-103, TCA 55-12-139, TCA 55-1-107, TCA 55-1-116, TCA 55-3-112, TCA 55-3-122.

4.8.5. None of the codes provided allow for the taking of property without due process.

4.8.6. None of the codes reference a procedure called a "police hold."

4.8.7. Each of the provided codes are for the privilege of operating a motor vehicle.

4.8.8. Plaintiffs are not in receipt of any legislative or constitutional provision authorizing the Defendants to act through a procedure called a "police hold."

1   4.8.9. Plaintiffs are not in receipt of any process or procedure to challenge a "police

2      hold."

3   4.8.10. Plaintiffs are not in receipt of any facts or circumstances that would constitute

4      privileged activity.

5   4.8.11. Plaintiffs are not in receipt of any alleged facts or circumstances that would tend

6      to show that Tracy was engaged in for-profit activity affecting a public interest for

7      which a privilege tax was owed.

8   4.8.12. There are no pending charges against the Plaintiffs related to the taking of the

9      van.

10   4.8.13. Alcohol was not involved in the taking of the van.

11   4.8.14. Drugs were not involved in the taking of the van.

12   4.8.15. The van was not left unattended.

13   4.8.16. The van was not abandoned.

14   4.8.17. The van was stopped at a location that did not pose any risk or obstruction to

15      the public.

16   4.8.18. The van was stopped at a location that did not impede commerce.

17   4.8.19. There is no judicial determination that the Plaintiffs property is an automobile

18      required to pay a privilege tax, ie motor vehicle.

19   4.8.20. There is no dispute regarding to who the van belongs.

20   4.8.21. There are no hardships on the Defendants to abide by constitutional require-

21      ments.

22   4.8.22. There are no hardships on the Defendants to apply the law as written.

23            4.9. CHIEF JUSTICE TANEY'S BADGES AND INCIDENTS OF SLAVERY

24   4.9.1. Plaintiffs are of the white race.

1   4.9.2. The positive inclusion of the Thirteenth and Fourteenth Amendments to the Fed-
2       eral Constitution is res judicata.

3   4.9.3. Defendants are subjecting Plaintiffs to a deprivation of liberty, specifically to be
4       free from badges and incidents of slavery.

5   4.9.4. Defendants have refused to return property in an attempt to coerce Plaintiffs to
6       apply for the Master's revocable permission, evidenced by a the modern day Dred
7       Scott pass called a driver's license, to use the public's roads.

8   4.9.5. Defendants have refused to return property in an attempt to coerce Plaintiffs to
9       also apply for a Master's second revocable permission, evidenced by the Masters
10      brand affixed to the property know as a license plate, to use the public's roads.

11  4.9.6. Plaintiffs are under threat to be stopped and seized for traveling without a Mas-
12      ter's permission to leave their home by automobile.

13  4.9.7. Plaintiffs are threatened with jail for not displaying a pass for travel.

14  4.9.8. Defendants deny the right of the Plaintiffs to enter the municipality whenever they
15      please, however they please, singly or in companies, without pass or passport, and
16      without obstruction, to sojourn there as long as they please, to go where they please
17      at every hour of the day or night without molestation.

18  4.9.9. Defendants are subjecting Plaintiffs to strict police regulations, drawing a broad
19      line of distinction between the free and slave classes.

20  4.9.10. Defendants are enforcing that all races of the slave class must carry their Mas-
21      ter's revocable driver's license in order to go wherever they please.

22  4.9.11. Plaintiffs are not free to use the roads that the public has an absolute right to use.

23                        4.10. Traffic Is Commerce

24  4.10.1. Traffic is Commerce pursuant to TCA 55-50-102(9)(A),(B).

25  4.10.2. Plaintiffs do not use the roads for livelihood or gain.

1   4.10.3. Plaintiffs do not use their property, the van, in interstate, foreign or intrastate
2       commerce.

3   4.10.4. Defendants have refused to return property in an attempt to coerce Plaintiffs to
4       apply for the revocable privilege of making the public's roads a place of business,
5       permission evidenced privilege tax receipt called a driver's license.

6   4.10.5. Defendants have refused to return property in an attempt to coerce Plaintiffs to
7       also apply for a second revocable privilege for permission to use the van as an in-
8       strumentality of commerce on the public roads, permission evidenced by a license
9       plate affixed to the property know as a license plate, to use the public's roads.

10  4.10.6. Registration of an automobile constitutes a privilege tax pursuant to TCA 5-8-
11       102(b) and TCA 55-4-101.

12  4.10.7. Privilege taxes are taxes on (privileges) business, occupation, vocation or calling
13       pursuant to TCA 5-8-102(a).

14  4.10.8. Plaintiffs are under threat and cannot leave their home without a driver's license
15       to enjoy their property, the van.

16  4.10.9. Congress has power to regulate Commerce.

17  4.10.10. Congress is regulating the driver's license.

18  4.10.11. Title 6 CFR 37 regulates every aspect of the driver's license and Identification
19       Card including surface of the license, scannable technology on the back of the li-
20       cense, documents required, application requirements and more.

21  4.10.12. Title 6 CFR 37 is the executive implementation of Congress's 49 USC Chapter
22       303.

23  4.10.13. The State of Tennessee is participating in the National Driver Register (see TCA
24       55-50-407).

25  4.10.14. Pursuant to 49 USC 30303, in order for the State of Tennessee to participate in

1    the NDR, the State must have notified the Secretary of Transportation of its inten-
2    tion to be bound by 49 USC 30304.

3    4.10.15. The Department of Motor Vehicles prior to issuing a regular driver's license
4    must request from the U.S. Secretary of Transportation, information from the Na-
5    tional Driver Register pursuant to 49 U.S.C. 30304(e).

6    4.10.16. Operating a motor vehicle is a privilege requiring payment of privilege taxes for
7    use of the public's roads when engaged in some business, occupation, vocation or
8    the like.

9    4.10.17. An automobile required to pay a privilege tax is a motor vehicle.

10   4.10.18. Pursuant to 49 USC 30301(5) "motor vehicle operator's license" means a li-
11   cense issued by a State authorizing an individual to operate a motor vehicle on pub-
12   lic streets, roads, or highways.

13   4.10.19. Privilege taxes are required for the operation of "motor vehicles."

14   4.10.20. Congress is regulating all driver's licenses, both "commercial and noncommer-
15   cial."

16   4.10.21. Noncommercial does not mean "not a commerce activity."

17   4.10.22. Congress is powerless to regulate anything which is not commerce.

18   4.10.23. Defendants refuse to return the Plaintiffs property, in spite of the absence of
19   any tax assessment or prompt and meaningful hearing.

20   4.10.24. Plaintiffs are not in receipt of any liability to pay privilege taxes for the use of
21   the roads when no interstate or intrastate commerce is involved.

22   4.10.25. For Plaintiffs to apply for the license and registration and not use it for the busi-
23   ness designated would constitute fraud on the state.

24              4.11. UNDUE BURDEN ON RELIGIOUS FREE EXERCISE

25   4.11.1. Plaintiffs have a religious objection against committing fraud on the state.

1  4.11.2. Plaintiffs have a religious objection against bearing false witness to register the
2      van.

3  4.11.3. Plaintiffs have a religious objection against bearing false witness to apply for a
4      driver's license.

5  4.11.4. Plaintiffs would have commit fraud and break more laws of yhwh, contained in
6      the first five books of scripture, to complete state license and registration forms in
7      such a way for the forms to not be rejected.

8  4.11.5. For Plaintiffs to apply for a license and registration and not use it for the busi-
9      ness designated they would have to break one or more of the commandments in
10      scripture.

11  4.11.6. Plaintiffs would have to willfully, knowingly and intentionally commit perjury
12      about being engaged in interstate or intrastate commerce in order to apply for and
13      obtain a drivers license and registration which would cause them to violate their
14      truly and sincerely held religious beliefs specifically bearing false witness and covet-
15      ing.

16                        4.12. DAMAGES

17  4.12.1. Continuing to this very day the Defendants have not returned the van.

18  4.12.2. Continuing to this very day the Plaintiffs have not been provided by the Defen-
19      dants any process or procedure to challenge the taking of the van.

20  4.12.3. Continuing to this very day the Plaintiffs have not been able travel at liberty.

21  4.12.4. Continuing to this very day the Plaintiffs have not been able to freely associate
22      with anyone without complete dependence on friends or family to help.

23  4.12.5. Continuing to this very day the Plaintiffs work through conflicts with each other
24      over committing fraud on the State to obtain the "Dred Scott jail pass" known as a
25      driver's license.

26  4.12.6. Continuing to this very day the Plaintiffs work through conflicts with each other

1    over committing fraud on the state to apply for registration and pay the privilege
2    tax even though they have no intention to put the van to use in a for-profit activity
3    affecting a public interest.

4    4.12.7. Continuing to this very day the Plaintiffs work through conflicts with each other
5    over letting the Defendants successfully coerce the Plaintiffs to engage in intrastate
6    or interstate commerce and engage in the revocable privilege related to motor vehi-
7    cle registration and driver's licenses.

8    4.12.8. Continuing to this very day the Plaintiff's must risk threat of harassment, incar-
9    ceration, adverse possession of property and litigation just to locally buy food and
10   associate with family and friends.

11   4.12.9. On November 30th, 2017, Bill's ex-wife was moved the Oxford Mississippi
12   chancery court to restricted Bill's ability to pick-up his daughters based on the De-
13   fendants' May 29th, 2017, actions.

14   4.12.10. Plaintiffs have been deprived of their intangible right of honest government ser-
15   vices because of the Defendants' unlawful application of Federal and Tennessee
16   statutes.

17   4.12.11. Plaintiffs have been deprived of their intangible right of honest government ser-
18   vices because the Defendants have violated the law in light of clearly established US
19   and TN Supreme Court decisions.

20   4.12.12. Continuing to this very day the Plaintiffs live in fear of how yhwh, the Almighty
21   of Abraham Isaac and Jacob, would immediately punish and curse Plaintiffs for
22   knowingly violating his commandments including and not limited to bearing false
23   witness and committing fraud to do as the Defendants direct.

1       5. CLAIMS

2       5.1. COUNT 1 - VIOLATION OF THE FOURTH AMENDMENT PROHIBITION AGAINST
3               UNREASONABLE SEIZURES PURSUANT TO 42 U.S.C. 1983

4       5.1.1. Plaintiffs repeat and re-alleges paragraphs 4.1.1 through 4.12.12 above as if fully

5               set forth herein.

6       5.1.2. The Fourth Amendment prohibits "unreasonable searches and seizures of property

7               by the government."

8       5.1.3. A taking of property that may be lawful at its inception may nevertheless violate

9               the Fourth Amendment if the manner of its execution or its duration unreasonably

10              infringes the possessory interests protected by the Fourth Amendment.

11      5.1.4. Plaintiffs have a strong possessory interest in the van as it is necessary to perform

12              their duties in their daily life.

13      5.1.5. Plaintiffs asserted their possessory interest by communicating with each of the De-

14              fendant on multiple occasions about returning their property.

15      5.1.6. Defendants effected a complete infringement on Plaintiffs possessory interest by

16              denying Plaintiffs the use of their property for over 1 year and continuing to this

17              day.

18      5.1.7. Defendants denied the Plaintiffs the use of their property without any hearing,

19              trial, warrant or probable cause determination.

20      5.1.8. Defendants denied the Plaintiffs the use of their property without informing them

21              of how to challenge the taking of their property.

22      5.1.9. Defendants told Plaintiffs that they could have their property back if they would

23              register the van, which is apply for and pay a privilege tax on their property.

24      5.1.10. The reason for taking the van was to enforce Dred Scott badges and incidents of

25              slavery requiring a mere pass for travel.

26      5.1.11. In the alternative, the reason for the taking of the van was to compel commerce.

1    Specifically, the van was taken to force the Plaintiffs to pay a privilege tax on their
2    property when the property is not put to a use for livelihood or gain.

3    5.1.12. Even if the Defendants had probable cause for taking the van, all charges in-
4    volved in the taking of the van were dismissed with costs taxed to the state.

5    5.1.13. Following the initial stop on May 29th 2017, without finding any for-profit ac-
6    tivity affecting a public interest, it was unreasonable for Wilbanks to Jail Tracy.

7    5.1.14. Following the initial stop on May 29th 2017, without finding any for-profit ac-
8    tivity affecting a public interest, it was unreasonable for Wilbanks to order Warren
9    to tow and put a "police hold" on Bill's property.

10   5.1.15. Following the dismissal of all charges on June 13th 2017, the van had no eviden-
11   tiary value in any court proceeding.

12   5.1.16. Following the dismissal of all charges on June 13th 2017, the Defendants contin-
13   ued possession of the Plaintiff's property became unreasonable.

14   5.1.17. Warren is the custodian of the van taken by the Defendants.

15   5.1.18. The Defendants working in concert decide when to release the property.

16   5.1.19. The City was noticed via Certified Mail of Plaintiffs right of possession of the
17   property, the judgment for the dismissal of all charges signed by the General Ses-
18   sions Judge in Savannah Tennessee, that Plaintiffs were not in receipt of the lawful
19   basis for the taking of the property and that the property has not been released.

20   5.1.20. Defendants knew or should have known that they could not take property when
21   all charges are dismissed without process and procedure, probable cause determina-
22   tion, warrant or seizure and forfeiture procedure.

23   5.1.21. By taking property and refusing to take any action to release the property for
24   over 1 year after all charges were dismissed, Defendants infringed on Plaintiffs' rea-
25   sonable expectation to be free from unreasonable seizures secured by the Fourth
26   Amendment.

5.1.22. As a direct and proximate result of the Defendants taking of the van, Plaintiffs damages include but are not limited to loss of property continuing to this day, humiliation, marital conflicts, anxiety, emotional distress, missed medical appointments, hardships to get food, unreasonable restraint to find work, and undue burden to congregate, to freely associate and to exercise their right to liberty.

## 5.2. COUNT 2 - VIOLATION OF THE FOURTEENTH AND FIFTH AMENDMENT'S PROCEDURAL DUE PROCESS GUARANTEE PURSUANT TO 42 U.S.C. 1983

5.2.1. Plaintiffs repeat and re-alleges paragraphs 4.1.1 through 4.12.12 above as if fully set forth herein.

5.2.2. There are two steps to a procedural due process analysis: the court must first determine there was a deprivation of a protected liberty or property interest, and if so, the Court assesses what process was due.

5.2.3. The Due Process Clause also encompasses a third type of protection, a guarantee of fair procedure. The deprivation by state action of a liberty interest is not in itself unconstitutional; what is unconstitutional is the deprivation of such an interest without due process of law. Procedural due process rules are meant to protect persons not from the deprivation, but from the mistaken or unjustified deprivation of life, liberty or property.

5.2.4. The Fifth Amendment guarantees the right to be free from the taking of property by the government except where such deprivation of property is accomplished by due process of law, including notice of the deprivation and a prompt and meaningful opportunity to be heard.

5.2.5. It can hardly be argued that acting under color of law could implicate due process.

5.2.6. In the context of police taking property, due process requires that police give the owner of the property written notice at the time of the taking.

1  5.2.7. In the alternative, even if due process does not require police to provide written
2      notice at the time of the taking, due process requires written notice be provided
3      within a timely manner after the initial taking.

4  5.2.8. In the alternative, even if due process does not require police to provide written
5      notice at the time of the taking, due process requires some form of notice explaining
6      the grounds and the procedure for challenging the taking of property.

7  5.2.9. Additionally, due process requires a prompt and meaningful hearing as to the le-
8      gality of the deprivation.

9  5.2.10. To determine whether a constitutional violation has occurred, it is necessary to
10      ask what process the City provided and whether it was constitutionally adequate.

11  5.2.11. It would be unreasonable to think after over 1 year it would be possible to pro-
12      vide a "prompt and meaningful hearing" as to the legality of the deprivation.

13  5.2.12. Defendants knew or should have known that probable cause requires a Judge to
14      make a probable cause determination as to the legailty before the deprivation or
15      promptly thereafter.

16  5.2.13. Defendants knew or should have known that State law does not allow depriva-
17      tion of property without process and procedure.

18  5.2.14. Defendants knew or should have known that without an ongoing suit, stolen or
19      abandoned property or alcohol or drugs being involved in the taking of property,
20      that State law does not allow state actors to "hold" property.

21  5.2.15. Defendants knew or should have known that in order to take and keep property,
22      when charges were dismissed, requires a "prompt and meaningful hearing".

23  5.2.16. At no point were Plaintiffs provided with a meaningful opportunity to be heard
24      as to the lawfulness or legality of the taking of the property.

25  5.2.17. Due Process protects the Plaintiffs right to not be coerced except by lawful judi-
26      cial power.

1   5.2.18. By failing to provide Plaintiffs any notice regarding the proper process for ob-
2         taining the property, failing to provide written notice of any kind and failing to pro-
3         vide Plaintiffs with a meaningful opportunity to be heard, the Defendants deprived
4         them of their Fifth Amendment guarantee of due process of law.

5   5.3. COUNT 3 - 42 U.S.C. 1983 MONELL CLAIM AGAINST DEFENDANT CITY OF
6                                    CRUMP

7   5.3.1. Plaintiffs repeat and re-alleges paragraphs 4.1.1 through 4.12.12 above as if fully
8         set forth herein.

9   5.3.2. The violations of Plaintiffs constitutionally secured rights by the Defendants were
10        caused by the policies, customs and ratification of the City as described above.

11  5.3.3. Spencer, the Mayor of the City, an official with final decision making authority,
12        ratified the behavior and conduct of the Defendant Wilbanks, the City Alderman,
13        Mayor and Chief of Police each were certified mailed notice of the taking of the
14        property and that all charges were dismissed, sent FOIA requests requesting the le-
15        gality of the taking and were noticed that there were no pending charges. Each of
16        the Alderman, Mayor and Chief of Police ratified the illegal action of taking prop-
17        erty without due process of law and misapplying the law as it is written.

18  5.3.4. The existence of a custom of tolerance and acquiescence to federally secured rights
19        violations occurred by the City ratifying the actions of Warren and Wilbanks.

20  5.3.5. Moreover, Spencer and the Alderman of the Cityallowed the continued "police
21        hold" of the Plaintiffs property and ratified the Defendants taking property without
22        a probable cause determination, without a lawful hearing, without trial, without a
23        warrant, without a notice of the lawful basis and without providing the Plaintiffs
24        any documentation related to the taking of their property nor how to challenge the
25        taking of their property. The City knew all charges were dismissed and knew or

1    should have known that there was no judicial determination that the Plaintiffs
2    property was subject to the payment of a privilege tax.

3    5.3.6. The City failed to inquire into whether the Plaintiffs' property was in fact subject
4    to privilege taxation, and instead ratified the Defendants acting as accusers, judge,
5    jury, and executioner to compel taxation on the plaintiffs without even attempting
6    to get any sort of judicial determination of liability or probable cause.

7    5.3.7. The City refused to act to remedy the Plaintiffs damages and refused to correct the
8    actions of the other Defendants. Instead the City approved the Defendants actions.

9    5.3.8. The City's ratification and acceptance of the Defendants actions continues to this
10    day.

11
12    5.4. COUNT 4 - CONSPIRACY AGAINST RIGHTS TO LIBERTY PURSUANT TO 42
    U.S.C 1983

13    5.4.1. Plaintiffs repeat and re-alleges paragraphs 4.1.1 through 4.12.12 above as if fully
14    set forth herein.

15    5.4.2. The individual Defendants reached an agreement among themselves to not return
16    Plaintiffs property by continuing something called a "police hold" on the Plaintiffs
17    property.

18    5.4.3. Defendants agreed to not allow for the release of the property without the prop-
19    erty having paid the privilege tax and a licensed driver must pick it up. Moreover,
20    the Individual Defendants acted in concert to prevent the Plaintiff from being in-
21    formed of the lawful basis for the taking of their property and how to challenge the
22    taking of their property.

23    5.4.4. Each Defendant furthered the conspiracy to violate Plaintiffs constitutionally se-
24    cured rights by willfully and deliberately failing to provide a lawful hearing and fail-
25    ing to obtain a warrant for the taking of the property, thereby depriving the Plain-
26    tiffs the opportunity to be heard.

1   5.4.5. The individual Defendants worked in concert to accomplish an unlawful purpose
2       by unlawful means. The purpose is to obtain an advantage of putting the Plaintiffs
3       in a status of servitude or compelled commerce by not returning the van to the
4       Plaintiffs and not providing any due process and procedures to challenge the taking.
5   5.4.6. In furtherance of the conspiracy, Warren and Wilbanks committed overt acts and
6       was otherwise willful participants in joint unlawful activity.
7   5.4.7. As a direct and proximate result of the Defendants overt acts, the Plaintiffs in-
8       curred injuries, including but not limited to, loss of normal interactions with soci-
9       ety, humiliation, fear, pain, loss of property, Tracy was jailed, loss of half of their
10      time with their daughters and on going emotional distress.
11  5.4.8. The misconduct described above in the Count was taken with malice, willfulness
12      and reckless disregard to the Plaintiffs rights. Specifically, each defendent were noti-
13      fied of the taking of property, charges dismissed costs taxed to the state, Defendants
14      were requested to provide the lawful basis for the taking and notified that the prop-
15      erty belongs to Bill and Defendants continued to "hold" the property, knowing that
16      probable cause did not exist.

17  5.5. COUNT 5 - VIOLATION OF THE THIRTEENTH AMENDMENT ABOLITION
18                          OF INVOLUNTARY SERVITUDE

19  5.5.1. Plaintiffs repeat and re-alleges paragraphs 4.1.1 through 4.12.12 above as if fully
20      set forth herein.

21  5.5.2. Plaintiffs allege that because the registration constitutes a privilege tax and the
22      drivers license (a tax receipt for a privilege) is required to merely use the roads, that
23      the Plaintiffs having property taken and Tracy jailed is either a result of Defendants
24      attempting to compel commerce or resurrecting the Dred Scott decision and apply-
25      ing badges and incidents of slavery to all races "equally" and not just the "slave
26      races" as Chief Justice Taney put it.

5.5.3. Use of the roads when no interstate or intrastate commerce is involved yet demand a license using slight changes in terms is to apply descriptions from Dred Scott of the badges and incidents of slavery. Blatant discrimination by unconstitutional application of revenue tax on commerce against men and women using the roads not involved in a privilege is to treat them as an inferior class, and to subject them to strict police regulations, drawing a broad line of distinction between the citizen and the slave races and is also a provision by which any negro, Indian, or mulatto servant who was found wandering out of the town or place to which he belonged without a written pass such as is therein described was made liable to be seized by anyone, and taken before the next authority to be examined and delivered up .... to pay the charge which had accrued thereby. And..... provides that if any free negro shall travel without such pass, and shall be stopped, seized, or taken up, he shall pay all charges arising thereby.

5.5.4. Involuntary servitude involves a condition of having some of the incidents of slavery.

5.5.5. Defendants, under the guise of public safety via the police power are requiring a license to engage in a "privilege" regulated by Congress and attempting to compel the plaintiffs to engage in for-profit activity affecting a public interest against their will and without just compensation therefore ignoring the Thirteenth Amendments prohibition against involuntary servitude and slavery.

5.5.6. The Thirteenth amendment abolished involuntary servitude and slavery.

5.5.7. Defendants have completely disregarded the thirteenth amendments prohibition against involuntary servitude and slavery.

1    5.6. COUNT 6 -  VIOLATION OF THE FIFTH AND THIRTEENTH AMENDMENT
2         TO COMPEL COMMERCE WITH OUT JUST COMPENSATION

3    5.6.1. Plaintiffs repeat and re-alleges paragraphs 4.1.1 through 4.12.12 above as if fully
4         set forth herein.

5    5.6.2. Defendants on May 29th 2017 took property from the plaintiffs in order to com-
6         pel plaintiffs to put their property to use as an instrumentality of commerce and to
7         pay two privilege taxes, specifically registration and a drivers license.

8    5.6.3. Defendants are attempting to coerce Plaintiffs into getting permission to use the
9         roads for interstate or intrastate commerce, specifically by attempting to compel the
10        payment of a privilege tax on property that is put to use for livlihood or gain.

11   5.6.4. Plaintiffs were not engaged in any for-profit activity affecting a public interest and
12        were not using the roads as a place of business, occupation, vocation or the like.

13   5.6.5. Plaintiffs were not engaged in any activity for which a privilege tax could have
14        been owed.

15   5.6.6. The Defendants, through a custom and habit called a 'police hold', refuse to re-
16        lease Plaintiffs' property without two conditions being completed, which requires
17        that Plaintiffs pay a privilege tax on their property and Plaintiffs successfully apply
18        for and obtain a 'driver's license'.

19   5.6.7. As a result of the Plaintiffs failure to carry badges and incidents of slavery or en-
20        gage in interstate or intrastate commerce, Plaintiffs property was taken and to this
21        day has not been returned, Tracy was jailed and other damages have accrued.

22   5.7. COUNT 7 - VIOLATION OF THE FIRST AMENDMENT PROTECTION TO
23                    FREE EXERCISE OF RELIGION

24   5.7.1. Plaintiffs repeat and re-alleges paragraphs 4.1.1 through 4.12.12 above as if fully
25        set forth herein.

26   5.7.2. Defendants to this day have refused to return Plaintiffs property even after all pos-

1     sible probable cause and all 4 alleged charges against Tracy, had been dismissed
2     with costs taxed to the state.

3     5.7.3. The Defendants are requiring Plaintiffs to commit fraud on the state, commit per-
4     jury, bear false witness, and covet revocable privileges in violation of Plaintiffs sin-
5     cerely held religious beliefs and training.

6     5.7.4. The Defendants violating clearly established the law and enforcing privilege tax
7     laws on all people regardless of whether their activity is privileged, imposes a sub-
8     stantial burden on Plaintiffs free exercise of religion by attempting to coerce them to
9     go against the Almighty and choose between committing fraud on the State by tak-
10    ing out a license and not using it for the business designated or paying substantial
11    penalties to the government and face jail time.

12    5.7.5. The license furthers no compelling governmental interest by compelling the use of
13    a social security number when Plaintiffs are religiously barred from the benefit pro-
14    gram which is voluntary.

15    5.7.6. The license furthers no compelling governmental interest by compelling Plaintiffs
16    to violate scripture and commit fraud on the state.

17    5.7.7. Plaintiffs exercise of religion has been prohibited by the Defendants by way of
18    threat of incarceration, actual incarceration, actual property loss, threat of property
19    loss for using the roads to travel to religious services, traveling for holy days, minis-
20    tering the word, traveling to help the needy or traveling to help widows and or-
21    phans.

22    5.7.8. Plaintiffs payment of a privilege tax does not reduce any risk to the public and are
23    not due because privilege taxes are taxes on businesses, occupations, vocations and
24    callings.

25    5.7.9. Plaintiffs should not be required to obtain licenses for some privilege when there is
26    no privileged activity.

1   5.7.10. The least restrictive alternative would be for the Defendants to apply the law as

2        written in black letter law and to obey controlling court decisions from the United

3        States Supreme Court.

4                              6. CONCLUSION

5   Wherefore, Plaintiffs, move this court for a judgment against each of the Defendants

6   jointly and severely for compensatory damages in the amount of $300,000 and $500 per

7   day for each day the property was taken and further moves this court for judgment

8   against each of the Defendants jointly and severely for punitive double damages plus the

9   cost of this action and such other non monetary relief the court deems just and equatable.

<br>

                                      2/11/19

                                     Tracy Arnold
                     email: tracy@arnoldnet.org
              telephone: (423)529-4335

                                    2/11/19

                                     Bill Arnold
   1400 Harris Road Adamsville Tennessee 38310
                  email: bill@arnoldnet.org
              telephone: (423)529-4323

<br>

_____

_____     Witnesses

_____

"... ... (A)t the mouth of two witnesses, or at the mouth of three witnesses, shall the matter be established." Deuteronomy 19:1