AT THE UNITED STATES DISTRICT COURT FOR THE WESTERN
DISTRICT OF TENNESSEE

Tracy Arnold, Bill Arnold
    Plaintiffs,

      v.

City of Crump, Larry Wilbanks
(in his Official and Individual Capacity),
Tim Kelly (in his Official and Individual
Capacity), Glen Spencer (in his Official and
Individual Capacity), Randall Warren
    Defendants.

Cause # 1:18-cv-01227-STA-egb

RECEIVED BY
___JKC___

MAR 19 2019

Thomas M. Gould, Clerk
U.S. District Court
W.D. OF TN, Jackson

## PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

1    Plaintiffs, Bill Arnold and Tracy Arnold, respectfully move this honorable Court, pur-
2  suant to L.R. 12.1, to deny Defendants' February 19, 2019 (re: No 9) Rule 12(b)(6) mo-
3  tion to dismiss.

### 1. INTRODUCTION

5   1.1. Plaintiffs are Bill Arnold and Tracy Arnold; Defendants are City of Crump, Larry
6        Wilbanks, Tim Kelly, Glen Spencer and Randall Warren.

7   1.2. Plaintiffs sued Defendant's for an unlawful taking of property, compelling involun-
8        tary servitude, violating their right to free association and multiple due process vio-
9        lations.

10  1.3. Defendants, City of Crump, Larry Wilbanks, Tim Kelly and Glen Spencer by and
11       through their counsel Dale Conder Jr filed a Rule 12(b)(6) Motion to Dismiss on
12       Febuary 19, 2019 (re: No 9).

13  1.4. Plaintiffs file this response in opposition to Defendants' Motion to Dismiss.

14  1.5. Plaintiffs Amended Complaint alleged a claim for Fourth Amendment unlawful
15       seizure based on the Defendants actions of taking the Plaintiffs' property without
16       providing a hearing, without obtaining a warrant and without providing the Plain-

tiffs with information on how to challenge the taking of the property. All charges were dismissed at the general sessions court hearing and when Tracy Arnold moved the court to release the van Judge Smith stated "I have nothing to do with that." There was no documentation on the taking of the property and to this day the Plaintiffs are continuously damaged by the Defendants actions of unlawfully taking property without due process and refusal to release it from something called a "police hold." To this day Plaintiffs have not been provided any form of procedural or substantial due process and are being treated as an inferior class, required to carry badges and incidents of slavery in order to exercise a counterfeit of liberty of movement be free to go from one place to another without molestation, at any time of the day or night.

## 2. ARGUMENT

### 2.1. STATUTE OF LIMITATIONS.
DEFENDANTS' MEMO II.A. (RE: NO. 9-1, PAGE ID 76 AND 77)

2.1. Federal standards govern when a statute of limitations begins to run and Plaintiffs argue they are not barred by the statute of limitations as: (1) the continuing violations doctrine applies in this instant suit as Defendants continue their wrongful conduct, injuries accrue everyday, and Defendants could cease their wrongful conduct to avoid further injury to Plaintiffs; (2) T.C.A. 55-4-101(a)(2) states that registration and fees shall constitute a privilege tax and T.C.A. 67-1-1501(a) allows 6 years to file suit against the Plaintiffs, from date of accrual, for the collection of **all** state, county or municipal privilege taxes for the benefit of cities, counties or the state; (3) that pursuant to T.C.A. 28-1-105(a), the dismissed charges could have been refiled by the City of Crump, or its employees, for up to one year after the dismissal, which would have been June 13, 2018; (4) the Defendants are acting as federal agents as they are enforcing federal law. See 49 USC 305 et seq and 28 CFR 25.54.

As an initial matter, the duration of the statute of limitations for § 1983 actions is governed by state law; however, federal standards govern when the statute begins

1   to run. See Wilson v. Garcia, 471 U.S. 261, 267, 105 S.Ct. 1938, 85 L.Ed.2d 254
2   (1985); Sevier v. Turner, 742 F.2d 262, 272 (6th Cir. 1986).

3   ### 2.1.1. CONTINUING VIOLATIONS DOCTRINE

4   2.1.1.1. Plaintiffs had a reasonable expectation that the Defendants would act lawfully

5   and provide some opportunity to be heard.

6   The characterization of a claim, including the determination of when the cause of
7   action accrued, is determined by federal law. Wallace v. Kato, 549 U.S. 384, 388,
8   127 S. Ct. 1091, 166 L. Ed. 2d 973 (2007). The statute of limitations begins to
9   run under federal law "when plaintiffs knew or should have known of the injury
10  which forms the basis of their claims." Ruff v. Runyon, 258 F.3d 498, 500 (6th
11  Cir.2001). "In determining when the cause of action accrues in section 1983 ac-
12  tions, [courts] have looked to what event should have alerted the typical lay per-
13  sons to protect his or her rights." Kuhnle Bros., Inc. v. County of Geauga, 103
14  F.3d 516, 520 (6th Cir.1997).

15  In Frederick C. Bowerman, et al v. International Union, United, No. 10-3500 (6th
16  Cir. 06/21/2011) the court recognized two categories of continuing violations. The
17  first "where the plaintiff can show prior [wrongful] **activity that continues into the**
18  **present,**" and the second is "where the plaintiff can show a longstanding and
19  demonstrable policy of discrimination." Bell v. Ohio State Univ., 351 F.3d 240,
20  247 (6th Cir. 2003) (internal quotation marks and citation omitted).

21  2.1.1.2. The Defendants wrongful conduct continues into the present, thus, the continu-

22  ing violations doctrine tolls the statute of limitations.

23  2.1.1.3. Plaintiffs argue that the Defendants wrongful conduct continues after the precip-

24  itating event that began the pattern and that the injury to the Plaintiffs continue to

25  accrue each day anew.

26  2.1.1.4. If the Defendants released the "police hold" on the property or in the alternative

27  provided the Plaintiffs with a lawful hearing, on the merits, thus ceasing their

28  wrongful conduct, further injury would be avoidable and statute of limitations

29  could begin.

30  Under the continuing violation doctrine, certain plaintiffs can overcome a statute
31  of limitations defense by arguing that the allegedly unconstitutional acts were
32  parts of a continuing violation amounting to a single wrong occurring within the
33  limitations period. See United Air Lines, Inc. v. Evans, 431 U.S. 553 (1977), Nat'l
34  R.R. Passenger Corp. v. Morgan, 536 U.S. 101 (2002), and Ledbetter v. Goodyear
35  Tire & Rubber Co., Inc., 127 S. Ct. 2162 (2007).

The Sixth Circuit applies the following test for a continuing violation in the context of a section 1983 action: "[a] 'continuous violation' exists if: (1) the defendants engage in continuing wrongful conduct; (2) injury to the plaintiff accrues continuously; and (3) had the defendants at any time ceased their wrongful conduct, further injury would have been avoided." Broom v. Strickland, 579 F.3d 553, 555 (6th Cir. 2009) (quoting Hensley v. City of Columbus, 557 F.3d 693, 697 (6th Cir. 2009)).

"[A] continuing violation is occasioned by continual unlawful acts, not continual ill effects from an original violation." Tolbert, 172 F.3d at 940 (quoting National Advertising Co. v. City of Raleigh, 947 F.2d 1158, 1166 (4th Cir.1991)). Passive inaction does not support a continuing violation theory. Id.; Paschal, 295 F.3d at 573.Nunn v. Tennessee Department of Correction, M2016-01518-COA-R3-CV (Tenn.App. 10/23/2017)

In Lovett v. Ray, 327 F.3d 1181, 1183 (11th Cir. 2003) the "critical distinction in the continuing violation analysis is whether the plaintiff complains of the present consequence of a one time violation, which does not extend the limitations period, or the continuation of that violation into the present." Nunn v. Tennessee Department of Correction, M2016-01518-COA-R3-CV (Tenn.App. 10/23/2017)

2.1.1.5. Plaintiffs complain about both the continuing violation, specifically, the unlawful taking of their property and the present consequence of the continuing violation.

2.1.1.6. At no time did the Defendants provide the Plaintiffs any statutory authority for their actions, facts and circumstances of privileged activity engaged in by the Plaintiffs or any other lawful authority for taking and placing a "police hold" on the property and Plaintiffs were not provided an opportunity for a judicial trial prior to or after the dismissal of all charges.

2.1.1.7. Plaintiffs therefore had no opportunity to present their objections and were left on their own, searching for basic answers with respect to challenging the Defendants actions.

### 2.1.2. SIX YEARS TO FILE SUIT FOR PRIVILEGE TAXES

2.1.2.1. The tax in dispute is a privilege tax. see T.C.A. 55-4-101(a)(2)[1].

---

1 TCA 55-4-101. Registration required before operation - Application - Issuance of registration and license plates - Rules and regulations - Temporary permit - Transfer of registration when changing vehicles - Fees - Safety rules for homemade trailers (a)(1) As a condition precedent to the operation of any motor vehicle upon the streets or highways of this state, the motor vehicle shall be registered as provided in this chapter. (a)(2) **The registration and the fees pro-**

1  2.1.2.2. There is no statutory authority for the Defendants actions.

2  2.1.2.3. Without providing the Plaintiffs with proof of an assessment or date for a judi-
3  cial trial the Defendants have confiscated property.

4  2.1.2.4. Plaintiffs argue the local officials have (6) years **after an assessment** to file suit
5  against the Plaintiffs for the collection of a privilege tax pursuant to T.C.A. 67-1-
6  1501(a)[2].

7  2.1.2.5. T.C.A. 55-4-101(a)(2) and T.C.A. 5-8-102(a)(b) are very clear that the registra-
8  tion constitutes a privilege tax.

9  2.1.2.6. T.C.A. 55-4-101(a)(2) specifically says registration shall constitute a privilege
10  tax.

11  2.1.2.7. The 6 years from accrual would have began Jan. 1, 2017 and ends Jan. 1, 2023.

12  2.1.2.8. In this instant suit the Defendants have taken the Plaintiffs property to compel
13  the payment of the privilege tax without any suit for the collection of a tax nor per-
14  form any assessment.

15  2.1.2.9. The Defendants are alleging they have the authority to take property until proof
16  of payment of a privilege tax is provided to the City of Crump.

17  2.1.2.10. Plaintiffs property was taken for not displaying the privilege tax receipt as an
18  attempt to compel the payment of a privilege tax without any assessment or judicial
19  trial. see T.C.A 55-4-101(a)(2).

20  2.1.2.11. Plaintiffs admitted in their Amended Complaint that they have not paid the
21  privilege tax and argue they have no known legal duty to pay the privilege tax.

22  Due process in matters of taxation means notice of suitable character, and an op-
23  portunity to be heard at some stage of the proceedings. (citations omitted) CEN-

**vided for registration shall constitute a privilege tax** upon the operation of motor vehicles.
2 TCA 67-1-1501. Limitation on assessment and collection of taxes (a) Locally Collected Privi-
lege Taxes. All state, county or municipal privilege taxes, including, but not limited to, busi-
ness, litigation, real estate transfer and mortgage taxes collected by the state or by local offi-
cials for the benefit of cities, counties or the state, shall be barred, and any lien for such taxes
shall be canceled and extinguished, unless the liens are collected or suits for the collection
shall have been instituted within six (6) years from January 1 of the year for which such taxes
accrued.

TRAL GEORGIA RAILWAY COMPANY v. WRIGHT, 28 S. Ct. 47, 207 U.S. 127 (U.S. 11/18/1907)

2.1.2.12. Plaintiffs also stated in their Amended Complaint that they are not in receipt of any tax assessment or hearing see Amended Complaint 4.10.23 and section 4.8.

2.1.2.13. The Plaintiffs are not in receipt of an assessment, judicial determination, probable cause for enforcement or any other lawful authority to compel the payment of a privilege tax when no facts and circumstances of a privilege are alleged by the Defendants. Plaintiffs complaint alleges they did not engage in any privilege taxable activity and that they do not use the public's roads for livelihood or gain.

A district court considering a defendant's motion to dismiss under Rule 12(b)(6) must construe the complaint in the light most favorable to the plaintiff and accept the Plaintiffs' allegations as true. Thurman v. Pfizer, Inc., 484 F.3d 855 (6th Cir. 05/08/2007)

2.1.2.14. The Defendants took the property under the premise that the tax was owed, without an assessment or judicial trial and continue to take property to this day for the sole purpose of compelling taxation.

2.1.2.15. Plaintiffs have a reasonable expectation that they should receive a tax assessment or some judicial trial to prove a duty for the payment of said privilege tax.

### 2.1.3. REFILING OF DISMISSED CHARGES

2.1.3.1. Pursuant to T.C.A. 28-1-105(a)[3] the dismissed affidavits, originally filed by Larry Wilbanks which were issued at the time of the arrest of Tracy Arnold and taking of the van on May 29, 2017, could be refiled for up to (1) year after dismissal without prejudice.

---

3 T.C.A. 28-1-105(a) "If the action is commenced within the time limited by a rule or statute of limitation, but the judgment or decree is rendered against the plaintiff upon any ground not concluding the Plaintiffs' right of action, or where the judgment or decree is rendered in favor of the plaintiff, and is arrested, or reversed on appeal, the plaintiff, or the Plaintiffs' representatives and privies, as the case may be, may, from time to time, commence a new action within one (1) year after the reversal or arrest. Actions originally commenced in general sessions court and subsequently recommenced pursuant to this section in circuit or chancery court shall not be subject to the monetary jurisdictional limit originally imposed in the general sessions court"

1   2.1.3.2. Defendants had until June 13, 2018 to refile the charges against Tracy Arnold.

2   The purpose of the statute is to give plaintiffs a "brief period" within which to re-
3   file their suit after it has been concluded on a basis other than dismissal on the
4   merits. Nashville, C. & St. L. Ly. v. Bolton, 184 S.W. 9, 11 (1911).

5   2.1.3.3. Plaintiffs had a reasonable expectation that the Defendants would move for
6   some form of hearing or judicial setting.

7   2.1.3.4. It is unreasonable to the Plaintiffs that the Defendants could lawfully act as
8   judge, prosecutor and executor.

9   2.1.3.5. Plaintiffs had a reasonable expectation that the charges would be refiled and the
10   Defendants and that the Plaintiffs would follow some form of process and proce-
11   dure.

12   2.1.3.6. Tracy was told by Wilbanks, at the Hardin County Jail on May 29, 2017, that
13   he could bring an action against her for up to 3 years. Plaintiffs believed after the
14   dismissal of all charges, Wilbanks would refile the charges, as they were not dis-
15   missed with prejudice.

16   2.1.4. FEDERAL AGENTS ENFORCING FEDERAL LAW

17   2.1.4.1. The States of the Union are barred from issuing Driver's Licenses and Titles
18   without first checking with the federal National Driver Registry and the National
19   Motor Vehicle Titling Information System. Congress dominates the subject of
20   Driver's Licenses and Motor Vehicles, which is why these Licenses issued from one
21   State is good in every State, say an Attorney's License is limited to intrastate where
22   the State is exercising it's sovereign power. See Amended Complaint 4.10

23   "....Congress may control the State laws so far as it may be necessary to control
24   them for the regulation of commerce. ..That regulation is designed for the entire
25   result,.... It produces a uniform whole..." Gibbons v. Ogden 22 U.S. 1, 206, 210

26   Tennessee Code 55-50-702 Part 7 "(a)...authority to make reciprocal agree-
27   ments...(c) ....authority to make Compacts..." Fn8..."Accordingly, before a com-
28   pact between two States can be given effect it must be approved by Congress. See
29   Virginia v. Maryland, 540 U.S. 56, 66 (2003). Once a compact receives such ap-
30   proval, it is "transform[ed] ... into a law of the United States." Ibid, (internal quo-

tation marks omitted). The Supremacy Clause, Art. VI, cl. 2, then ensures that a congressionally approved compact, as a federal law, pre-empts any state law that conflicts with the Compact. See Fidelity Fed. Sav. & Loan Assn. v. De la Cuesta, 458 U.S. 141, 152-153 (1982). Tarrant Regional Water District v. Herrmann, (U.S. 06/13/2013) No. 11-889 ,46 U. S. 582

A commercial vehicle such as the Swift truck at issue in this case must be licensed and registered to operate in the State of Tennessee. Under Tennessee Code Annotated § to, the registration and fees are a privilege tax which must be paid in order to operate in Tennessee. Other states and jurisdictions require registration as well, which becomes a practical problem for commercial vehicles operating in interstate commerce, because such vehicles would have to register in numerous jurisdictions. Consequently, states of the United States and some provinces in Canada adopted the International Registration Plan ("IRP"), a registration reciprocity agreement under which the registration fees for an individual vehicle are allocated among the jurisdictions in which the vehicle operates. Under the IRP, **the vehicle is issued one license plate and one registration,** called an IRP cab card, which shows that the vehicle is properly registered to operate in multiple jurisdictions. Franklin v. Swift Transportation Co., Inc., 210 S.W.3d 521 (Tenn.App. 07/12/2006)

### 2.1.5. ACCRUAL

2.1.5.1. Plaintiffs look to the court to determine what event should have alerted them to

protect their rights.

"In determining when the cause of action accrues in section 1983 actions, [courts] have looked to what event should have alerted the typical lay persons to protect his or her rights." Kuhnle Bros., Inc. v. County of Geauga, 103 F.3d 516, 520 (6th Cir.1997).

2.1.5.2. Whether the cause of action accrued on May 29, 2017 or June 13, 2017 is irrel

evant, if this honorable court determines the violation to be a continuing violation,

because the statute of limitations runs from the last overt act.

[E]ven when a plaintiff alleges a continuing violation, an overt act by the defendant is required to restart the statute of limitations and the statute runs from the last overt act.'" Peck, 894 F.2d at 849 (quoting Pace Industries, 813 F.2d at 237).

2.1.5.3. Plaintiffs are continuously harmed each day as they go without their property.

2.1.5.4. The Defendant's reiterate, in their motion to dismiss, the Defendants intent to

keep the property until their conditions are met, without pointing to any authority.

2.1.5.5. To this day the Plaintiffs have not been provided the statutory authority for the

1     Defendants actions.

2   2.1.5.6. Plaintiffs' argue that each day Defendants hold the property under color of law

3     and fail to provide an opportunity to be heard is a continuing violation which

4     restarts the statute of limitations every day.

5   2.1.5.7. If a man is taken to jail and no hearing is provided and he sits in jail for 20

6     years, each day he sits in jail is an overt act and the statute of limitations restarts ev-

7     ery day. This is no different than taking property without due process and not re-

8     turning it, each day it is kept under color of law and without due process, it should

9     be considered an overt act thus restarting the statute of limitations each day it is not

10     returned.

11   2.1.5.8. Plaintiffs should have at least been noticed by the Defendants they would not

12     file a suit for mere taxes and that Defendants would not provide any hearing and

13     considered the matter closed.

14   2.1.5.9. Plaintiffs' were neither informed of how nor given any opportunity to challenge

15     the taking of their property.

16       "Shoemaker was neither informed of, nor given any opportunity, to challenge the
17       application of the ordinance to his circumstances. This lack of meaningful notice
18       was constitutionally deficient." See Zilba v. City of Port Clinton, Ohio, 924 F.-
19       Supp.2d 867, 884 (N.D. Ohio 2013); Shoemaker v. City of Howell, 795 F.3d 553
20       (6th Cir. 07/29/2015)

21   2.1.5.10. Shoemaker is only one of the many cases which tells us that the Constitution

22     requires that not only must there be notice but that the harmed must be afforded an

23     opportunity to present their objections.

24   2.1.5.11. Plaintiffs' Amended Complaint at ¶ 4.5.7. the General Sessions Court ruled

25     that it has "nothing to do with that" when Plaintiff Tracy Arnold moved the court

26     to release the van on June 13, 2017.

27   2.1.5.12. Plaintiffs' Amended Complaint at ¶ 4.3.12 and 4.3.13, Tracy Arnold was not

28     provided any documentation related to the towing of the van or how to challenge

29     the taking of the van.

1   2.1.5.13. Plaintiffs' Amended Complaint at ¶ 4.12.1 and 4.12.2 continuing to this very
2       day the Plaintiffs' property has not been returned and the Plaintiffs have not been
3       provided by the Defendants any process or procedure as to how the could challenge
4       the taking of the van.

5   2.1.5.14. Tennessee laws do not allow for the taking of property when all charges are
6       dismissed, without due process, without a probable cause determination, without a
7       warrant or without documenting the taking of property and following some form of
8       procedure for taking the property.

9       "We hold that want of probable cause must be alleged and proven." Hartman v.
10      Moore, 126 S. Ct. 1695, 547 U.S. 250, 164 L.Ed.2d 441 (U.S. 04/26/2006)

11      "Sufficient information must be presented to the magistrate to allow that official
12      to determine probable cause; his action cannot be a mere ratification of the bare
13      conclusions of others." Ibid. See Aguilar v. Texas, supra, at 114-115; Giordenello
14      v. United States, 357 U.S. 480 (1958); *Nathanson v. United States, 290 U.S. 41*
15      *(1933)*

16  2.1.5.15. June 13, 2017 is the date the Defendants failed to appear in court resulting in
17      the dismissal of all charges against the Plaintiff. It was also the date that the taking
18      of the property and the "police hold" of the property was not before the court
19      therefore the court could not order the release of the property. The June 13, 2017
20      dismissal of all charges had nothing to do with the taking of the property and was
21      not an opportunity for the Plaintiffs to challenge the taking.

22  2.1.5.16. This Honorable Court should find that the statute of limitations begins anew
23      each day that the Plaintiffs' are without their property and further that this Honor-
24      able Court determines that the property was taken under color of law and without
25      due process.

26  2.1.5.17. Defendants abandoned any probable cause at the general sessions preliminary
27      hearing. Defendants abandoned any lawful privilege tax enforcement with penalties
28      at the general sessions preliminary hearing. Defendants only remaining lawful
29      course of action is a mere suit to recover allegedly owed privilege taxes.

| | |
|---|---|
| 1 | 2.2. FIFTH AMENDMENT AND THRITEENTH AMENDMENT |
| 2 | DEFENDANTS' MEMO II.B. (RE: NO. 9-1, PAGE ID 77 AND 78) |
| 3 | 2.2.1. FIFTH AMENDMENT |

2.2.1.1. Plaintiffs argue Congress's dominance in these licenses see Plaintiffs amended complaint section 4.10. Also, "[T]he reach of the equal protection guarantee of the Fifth Amendment is coextensive with that of the Fourteenth". Adarand Constructors, Inc. v. Pena, No. 93-1841 (U.S. 06/12/1995).

2.2.1.2. Plaintiffs argues that the Defendants are acting as federal agents by attempting to compel the titling and registration of Plaintiffs property in by and through the Federal Commerce Clause.

2.2.1.3. Tennessee does not have the sovereign power to issue a Certificate of Title. Before issuing a title, the state is mandated to check the federal National Motor Vehicle Title Information System, NMVTIS[4].

2.2.1.4. Titles are required before the State of Tennessee will issue registration. See T.C.A. 55-4-101.

2.2.1.5. The State of Tennessee by signed agreement in cooperation with the United States Secretary of Transportation has agreed to terms and conditions regarding the drivers licenses and titles (required for state registration). See 49 U.S.C 30502 and 49 U.S.C. 30303. see also 6 CFR 37 and 28 CFR 25 Part B.

> For if it be not a regulation of commerce, Congress has no concern with it. Gibbons V. Ogden, 22 U.S. 1, 67(U.S. 3/2/1824)

> (" The Framers gave **Congress** the power to regulate commerce, **not to compel it,...**") NATIONAL FEDERATION OF INDEPENDENT BUSINESS, et al., Petitioners (No. 11-393) v. KATHLEEN SEBELIUS, SECRETARY OF HEALTH AND HUMAN SERVICES, 132 S. Ct. 2566, 2596 **Likewise the "STATE" cannot compel commerce.** ("....no man should be compelled to do what the laws do not require; nor to refrain from acts which the laws permit ...") Calder v. Bull, 3 Dallas 386 (1798)

---

4 49 U.S.C. 30503- National Motor Vehicle Title Information System (b)Verification Checks.—Each State shall establish a practice of performing an instant title verification check **before issuing a certificate of title** to an individual or entity claiming to have purchased an automobile from an individual or entity in another State.

2.2.1.6. Plaintiffs' Secure Right to travel is protected under the fith Amentdment.

> The right to travel is a part of the "liberty" of which the citizen cannot be deprived without due process of law under the Fifth Amendment." Kent v. Dulles, 357 U.S. 116 (1958) No. 481. "316 U.S. Page 183 The Supreme Court said the Privileges and Immunities Clause of the Constitution, Article IV, Sec. 2 Clause 1 ("...undoubtedly .... inhibits discriminating legislation...it gives.....the right of free ingress into other States, and egress from them;...".) Paul v. Virginia 75 U.S. (7 Wall) 168

### 2.2.2. THIRTEENTH AMENDMENT

2.2.2.1. As its text reveals, the Thirteenth Amendment "is not a mere prohibition of State laws establishing or upholding slavery, but an absolute declaration that slavery or involuntary servitude shall not exist in any part of the United States." Civil Rights Cases, 109 U.S. 3, 20.

> "Involuntary servitude involves a condition of having some of the incidents of slavery...Servitude means '[a] condition in which a person lacks liberty especially to determine one's course of action or way of life' -- 'slavery' -- 'the state of being subject to a master.' UNITED STATES v. KOZMINSKI ET AL., 108 S. Ct. 2751, 487 U.S. 931, 936,937

2.2.2.2. Plaintiffs argue that the Defendants, under the guise of public safety via the police power, have taken property in an attempt to do one of two things. 1) To compel commerce ( to carry the permission to use the roads for livelihood or gain) or 2) to compel the Plaintiffs into involuntary servitude, specifically by attempting to compel the Plaintiffs to carry badges and incidents of slavery, a jail pass for travel, a license from one's Master.

> "There are few such rights (we have hitherto recognized only the Thirteenth Amendment right to be free from involuntary servitude, (citation omitted), and, in the same Thirteenth Amendment context, the right of interstate travel, see United States v. Guest, supra, at 759, n. 17)." JAYNE BRAY v. ALEXANDRIA WOMEN'S HEALTH CLINIC ET AL., 113 S. Ct. 753 (U.S. 01/13/1993) No. 90-985 "Page 357 U. S. 125... The right to travel is a part of the "liberty" of which the citizen cannot be deprived without due process of law under the Fifth Amendment." Kent v. Dulles, 357 U.S. 116 (1958) No. 481. "316 U.S. Page 183 The Supreme Court said the Privileges and Immunities Clause of the Constitution, Article IV, Sec. 2 Clause 1 ("...undoubtedly .... inhibits discriminating legislation...it

1  gives.....the right of free ingress into other States, and egress from them;...".) Paul
2  v. Virginia 75 U.S. (7 Wall) 168.

3  2.2.2.3. The license is merely a tax reciept to engage in the business designated.

4  2.2.2.4. Plaintiffs stand by their pleadings in their Amended Complaint. Further, Plain-
5  tiffs move this Honorable Court to hold them "to less stringent standards than for-
6  mal pleadings drafted by lawyers." Williams v. Curtin, 631 F.3d 380, 383 (6th Cir.
7  2011); Fed. R. Civ. P. 8(e) Pleadings must be construed so as to do justice.

8  2.3. FOURTH AMENDMENT
9  DEFENDANTS' MEMO II.C. (RE: NO. 9-1, PAGE ID 78 AND 79)

10  2.3.1. Plaintiffs argue that without facts and circumstances to the essential elements of
11  privilege, it was unreasonable for Wilbanks to Order the tow of the property. See
12  Amended Complaint 5.1.14.

13  The concept that a seizure of property may, just as seizures of individuals, begin
14  as reasonable but may then ripen into a seizure that violates the Fourth Amend-
15  ment is not new to constitutional jurisprudence. See United States v. Place, 462
16  U.S. 696 (1983); United States v. Avery, 137 F.3d 343, 349 (6th Cir. 1997).'

17  2.3.2. If the Defendants acted lawfully, they had to have done it under a legislative act or
18  city ordinance. The principal is:

19  "Tax proceedings are not in the strict sense judicial, but they are quasi-judicial, ...
20  Until a valid assessment is made by an authorized officer, the city or municipality
21  has no standing to enforce any claim." ... "The right to be heard in tax cases is a
22  constitutional right and indefeasible ... The whole question, therefore, is whether
23  the alleged assessment was such an assessment as could constitute the basis of any
24  enforceable tax claim at all. If there was no valid assessment the court had no
25  power to make one. SECURITY TRUST AND SAFETY VAULT COMPANY v.
26  CITY LEXINGTON., 203 U.S. 323

27  2.3.3. If there is a legislative act allowing the Defendants to take property, to compel a
28  privilege tax, without a judicial trial or an assessment, it is a bill of pains and penal-
29  ties. Plaintiffs argue that the Defendants acted unlawfully because there is no leg-
30  islative act allowing for the Defendants to act in such a way.

31  A bill of attainder is a legislative act which inflicts punishment without a judicial
32  trial. If the punishment be less than death, the act is termed a bill pains and penal-

1   ties. Within the meaning of the Constitution, bills of attainder include bills of
2   pains and penalties" United States V. Lovett, 66 S. Ct. 1073, 328 U.S. 303

3   "Whether a duty exists is a question of law." Rein v. Benchmark Constr. Co., 865
4   So.2d 1134, 1143

5   2.3.4. Defendants argue that they rely on T.C.A. 55-4-101[5] in their Motion to Dismiss,

6   which identifies a privilege tax.

7   2.3.5. Plaintiffs argue that the Defendants are unable to provide any facts and circum-

8   stances to the essential elements of a privilege.

9   "The essential elements of the definition of privilege is occupation and business,
10   and not the ownership simply of property, or its possession or keeping it. The tax
11   is on the occupation, business, pursuits, vocation, or calling, it being one in which
12   a profit is supposed to be derived by its exercise from the general public, and not a
13   tax on the property itself or the mere ownership of it."...."**The legislature cannot,**
14   **under our constitution, declare the simple enjoyment, possession, or ownership of**
15   **property of any kind a privilege, and tax it as** such. It may declare the business,
16   occupation, vocation, calling, pursuit, or transaction, by which the property is put
17   to a peculiar use for a profit to be derived from the general public, a privilege and
18   tax it as such, but it cannot tax the ownership itself as a privilege. The ownership
19   of the property can only be taxed according to value.") Phillips v. Lewis, 3 Shann.
20   Cas. 231

21   It cannot be denied that the Legislature can name any privilege a taxable privilege
22   and tax it by means other than an income tax, but the Legislature cannot name
23   something to be a taxable privilege unless it is first a privilege. .....'A privilege is
24   whatever business, pursuit, occupation, or vocation, affecting the public, the Leg-
25   islature chooses to declare and tax as such.' Corn et al. v. Fort, 170 Tenn. 377,
26   385, 95 S.W.2d 620, 623, 106 A.L.R. 647

27   "Any occupation, business, employment or the like, affecting the public, may be
28   classed and taxed as a privilege. K. & O. Railroad v. Harris, 99 Tennessee, 684.
29   Allen V. Pullman's Palace Car Company, 24 S. Ct. 39, 191 U.S. 171

30   2.3.6. Tennessee Code, Tennessee Case law and Tennessee Constitution all state that a

---

5 TCA 55-4-101. Registration required before operation - Application - Issuance of registration
and license plates - Rules and regulations - Temporary permit - Transfer of registration when
changing vehicles - Fees - Safety rules for homemade trailers (a)(1) As a condition precedent
to the operation of any motor vehicle upon the streets or highways of this state, the motor ve-
hicle shall be registered as provided in this chapter. (a)(2) **The registration and the fees pro-
vided for registration shall constitute a privilege tax upon the operation of motor vehi-
cles.**

1    privilege tax is a tax on business, occupation, business and the like.

2       Article 2, Section 28 of the Constitution of Tennessee recognizes only two general
3       kinds of taxation, which are ad valorem and privilege. These cover the whole do-
4       main of taxation and beyond these the Legislature may not go in the imposition of
5       taxes. Bank of Commerce & Trust Co. v. Senter, 149 Tenn. 569, 578, 260 S.W.
6       144; 373 S.W.2d 201, 213 Tenn. 136

7       "Privileges" defined.-A "privilege" is an occupation or business which requires a
8       license from some proper authority, designated by a general law, and not open to
9       all or anyone without such license. 8 Hum. 4711, 547; 1 Hum. 94; 3 Heis. 283; 3
10       Lea 277. The term "privileges" embraces any and all occupations that the legisla-
11       ture may, in its discretion, choose to declare privileges, and tax as such. 2 Pickle
12       136; 3 Head 414; 8 Heis. 456 (544); Pickle 369.; Tennessee Constitution 1834

13  2.3.7. Defendants, in their motion to dismiss, alleged that Lee .v. Ladd, 834 S.W. 2d

14    323(Tenn.Ct.App. 1992) was a similar reasoning that the Plaintiffs have raised.

15  2.3.8. Lee v. Ladd is not even close to a similar reasoning as suggested by the Defen-

16    dants. Ms. Lee paid the privilege tax and displayed an expired privilege tax receipt

17    for 11 months. Ms. Lee did not allege that registration constitutes a privilege tax

18    and that a privilege tax is a tax on business, occupation, vocation and the like.

19  2.3.9. Lee. v. Ladd is limited to an expired registration/temporary permit and a com-

20    plaint that she didn't receive a pre-deprivation hearing.

21  2.3.10. Plaintiffs' did not request a pre-towing hearing, did not complain about not re-

22    ceiving a pre-deprivation hearing and did not have an expired nor active "tempo-

23    rary operation permit."

24       "Towing the car to the impoundment lot gave the government the opportunity to
25       make sure the registration laws had been satisfied before releasing the car. See
26       Tenn. Code Ann. § 55-4-115(a)(3)."03/04/92 SANDY LEE v. GERALD LADD
27       AND METROPOLITAN

28  2.3.11. In order for the Plaintiffs to be "in violation of the terms" they must have (1)

29    made application and agreed to such terms, (2) there must have been a judicial trial

30    to determine liability.

31  2.3.12. T.C.A. 55-4-115(a)(3)[6] could not possibly provide the Defendants with authority

---

[6] T.C.A. 55-4-115(a)(3) Any person operating a motor vehicle **on a temporary operation per-
mit which** has **expired** or in **violation of the terms thereof** commits a Class C misdemeanor

1    to take the Plaintiffs' property and not return it until such time registration is pro-

2    vided to the Defendants, because TCA 55-4-115(a)(3) only applies to "temporary

3    operation permit[s]" on motor vehicles where at least one of two conditions must

4    occur before authorizing action: (1) permit is expired or (2) terms of the permit are

5    violated.

6        "The harder question in this case is whether towing Ms. Lee's car was an unrea-
7        sonable seizure under the Fourth Amendment. The answer to that question, in any
8        particular case, depends on the facts and circumstances involved, and the burden
9        of showing reasonableness is on the seizing party." Drinkard v. State, 584 S.W.2d
10       650 (Tenn. 1979).

11    2.3.13. If Ms. Lee was engaged in a for profit activity on the public's roads, then she had

12        agreed to the terms and conditions and apparently violated the terms.

13    2.3.14. It shall be presumed that Ms. Lee knew that the registration constituted a privi-

14        lege tax and that she was engaged in the privilege, which is presumed the reason she

15        applied.

16        "But, when no trade is carried on, or intended to be carried on, under the license,
17        it is clear that the license is a fraud upon the State law, if that law is in other re-
18        spects valid." Gibbons v. Ogden, 22 U.S. 1, (U.S. 3/2/1824)

19    2.3.15. Plaintiffs have not signed a title or applied for registration, which are both valid

20        constitutionally sound requirements to engage in interstate and intrastate com-

21        merce.

22    2.3.16. Lee v. Ladd does not have similar reasoning. It is completely irrelevant to the

23        Plaintiffs argument and it seems that the Defendants and Dale Conder Jr have mis-

24        understood the plain meaning of the law and the Plaintiffs argument.

25    2.3.17. The tax collectors, municipalities, law enforcement, dept of public safety, dept of

26        revenue, dept of motor vehicles among others are all executive.

27    2.3.18. The registration and drivers license are licenses granted by the executive branch

28        for some taxable privilege.

**and, in addition,** shall be required to register the vehicle concerned with the department, and the arresting officer shall not permit the vehicle to leave the officer's charge or custody until the proper registration thereof has been effected.

So far as we have been able to discover, no case has ever reached this court where the power of executive license was asserted except against a business clearly subject to the power of prohibition. Many such cases have, however, been before the state courts and the acts held unconstitutional. People v. Berrien, 124 Michigan, 664, 666; People v. Warden, 157 N.Y. 116, 123; People v. Jenkins, 202 N.Y. 53, 57; Chaddock v. Day, 75 Michigan, 527; Lochner v. New York, 198 U.S. 45, 63; Bessette v. People, 193 Illinois, 334. (MERRICK ET AL. v. N.W. HALSEY & COMPANY ET AL., 37 S. Ct. 227, 242 U.S. 568 (U.S. 01/22/1917))

2.3.19. Those engaging in the privilege on the roads and those not engaged in any privilege on the publics roads are two distinct classes and not similarly situated.

The streets belong to the public, and are primarily for the use of the public in the ordinary way. Their use for the purposes of gain is special and extraordinary, and, generally at least, may be prohibited or conditioned as the legislature deems proper. . . . Moreover, a distinction must be observed between the regulation of an activity which may be engaged in as a matter of right and one carried on by government sufferance or permission. In the latter case, the power to exclude altogether generally includes the lesser power to condition, and may justify a degree of regulation not admissible in the former. See Davis v. Massachusetts, 167 U. S. 43. Packard v. Banton, 264 U.S. 140, 144, 145

### 2.4. 14TH AMENDMENT
DEFENDANTS' MEMO II.D. (RE: NO. 9-1, PAGE ID 79)

2.4.1. Plaintiffs stand on their pleadings and look to this Honorable Court to determine the outcome of this count.

"In procedural due process claims, the deprivation by state action of a constitutionally protected interest in 'life, liberty or property' is not itself unconstitutional; what is unconstitutional is the deprivation of such an interest without due process of law." Zinermon v. Burch, 494 U.S. 113, 125, 110 S.Ct. 975, 108 L.Ed.2d 100 (1990) (quoting Parratt v. Taylor, 451 U.S. 527, 537, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981)) (emphasis in Zinermon ).

### 2.5. 1ST AMENDMENT
DEFENDANTS' MEMO II.D. (RE: NO. 9-1, PAGE ID 79 AND 80)

2.5.1. Plaintiffs stand on their pleadings and look to this Honorable Court to determine whether more than mere misconduct can be shown.

A pro se Plaintiffs' complaint is held to an especially liberal standard, and should only be dismissed for failure to state a claim if it appears "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him

1  to relief." Estelle v. Gamble, 429 U.S. 97, 106 (1976) (citation omitted).Herron v.
2  Harrison, 203 F.3d 410, 2000 Fed.App. 0054 (6th Cir. 02/14/2000)

3  2.6. CONSPIRACY
4  DEFENDANTS' MEMO II. F. (RE: NO. 9-1, PAGE ID 80 AND 81)

5  2.6.1. Plaintiffs argue that they have been stripped of secured property and liberty rights

6  because they are a class of persons that for religious beliefs cannot commit fraud on

7  the State to satisfy the Defendants unconstitutional application of valid constitu-

8  tionally sound statutes. Also see 2.3.19.

9  "a plaintiff must show, inter alia, (1) that "some racial, or **perhaps otherwise**
10  **class-based**, invidiously discriminatory animus [lay] behind the conspirators' ac-
11  tion," Griffin v. Breckenridge, 403 U.S. 88, 102, 29 L. Ed. 2d 338, 91 S. Ct. 1790
12  (1971), and (2) that the conspiracy "aimed at interfering with rights" that are
13  "protected against private, as well as official, encroachment," Carpenters v. Scott,
14  463 U.S. 825, 833, 77 L. Ed. 2d 1049, 103 S. Ct. 3352 (1983).

15  "There are four elements to a § 1985(3) claim: "(1) a conspiracy involving two or
16  more persons; (2) for the purpose of depriving, directly or indirectly, **a person or**
17  **class of persons** of the equal protection of the laws; and (3) an act in furtherance
18  of the conspiracy; (4) which causes injury to a person or property, or a depriva-
19  tion of any right or privilege of a citizen of the United States." Majors v. City of
20  Clarksville, 113 F.App'x 659, 661 (6th Cir. 2004).

21  2.6.2. The Defendants are more than two persons.

22  2.6.3. The Defendants directly or indirectly deprived the Plaintiffs equal protection of
23  the laws by taking property without any law granting them the authority to do so
24  and by failing to provide a hearing for the deprivation of the Plaintiffs property.

25  2.6.4. The Plaintiffs property was not similarly situated with those engaging in benefits
26  of privilege taxable activity.

27  2.6.5. The property was taken and has not been returned to this day which continues the
28  conspiracy between each Defendant, which causes Plaintiffs injury by taking prop-
29  erty without due process, under color of law.

30  2.6.6. Plaintiffs are discriminated against and stripped of secured rights for exercising
31  their religious belief to not contract into engaging in interstate or intrastate com-
32  merce on the public roads and to not commit fraud on the State.

1   2.6.7. Defendants are acting with deliberate indifference to the Plaintiffs' rights that

2       shocks the conscience. As alleged in the Plaintiffs complaint 4.6.17 where Tim Kelly

3       said "the others would not be happy I am talking to you."

4   2.6.8. Each Defendant acted in concert and agreed to not return the property in spite of

5       being informed that the Arnold's had not been provided a lawful hearing or the le-

6       gal basis for the taking of the van.

7   2.7. THE ARNOLDS' FAILURE TO COMPLY WITH FED.R.CIV.P. 5.1, PREVENTS THEM FROM
8       CHALLENGING THE CONSTITUTIONALITY OF TENN. CODE ANN. § 5-8-102.
9       DEFENDANTS' MEMO II. G. (RE: NO. 9-1, PAGE ID 81)

10  2.7.1. Plaintiffs never alleged that T.C.A. 5-8-102 is an unconstitutional statute.

11  2.7.2. Plaintiffs are not complaining about the County privilege tax.

12  2.7.3. Plaintiffs complaint is in regard to the Defendants attempting to compel taxation

13      under color of law and without due process.

14  2.7.4. Plaintiffs complaint is in regard to the Defendants taking property under color of

15      law and without due process.

16  2.7.5. Plaintiffs have no reason to believe that any statute mentioned in their complaint

17      or in this response are unconstitutional.

18  2.7.6. T.C.A. 55-4-101(a)(1)(2) and T.C.A. 5-8-102(a)(b) are very clear that the registra-

19      tion constitutes a privilege tax.

20  2.7.7. It is not understood why the Defendants have chosen to change the wording of

21      T.C.A. 5-8-102 by calling in a wheel tax. The statute specifically calls it a "motor

22      vehicle privilege tax". If this is an attempt to disguise the privilege tax as a wheel

23      tax, the plaintiffs reiterate that taxation in Tennessee is limited to ad valorem and

24      privilege taxation, therefore no matter what the tax is called, whether a road tax,

25      wheel tax or other tax, the tax is either an ad valorem tax or a privilege tax.

26      Article 2, Section 28 of the Constitution of Tennessee recognizes only two general
27      kinds of taxation, which are ad valorem and privilege. These cover the whole do-
28      main of taxation and beyond these the Legislature may not go in the imposition of
29      taxes. Bank of Commerce & Trust Co. v. Senter, 149 Tenn. 569, 578, 260 S.W.
30      144; 373 S.W.2d 201, 213 Tenn. 136

1    2.7.8. Plaintiffs argue that the Defendants are acting under color of law when enforcing
2           privilege tax laws without facts and circumstances to privilege taxable activity that
3           either Tracy or the van was involved.

4    2.7.9. Plaintiffs did not allege they are being compelled to work. Plaintiffs alleged that
5           the Defendants are attempting to compel them to pay a privilege tax without any
6           facts and circumstances to the essential elements of a privilege thus compelling them
7           to carry the permission to engage in interstate or intrastate commerce whether they
8           engage in the activity or not, which would be fraud on the State to take out a li-
9           cense and not use it for the business designated. In the alternative, Defendants are
10          dicriminating against the Plaintiffs and forcing badges and incidence of slavery
11          upon them.

12   2.7.10. Defendants should be required to follow the law as it is written and not be al-
13          lowed to make up the meanings of the words, molest people, take their property
14          and then play the role of judge, jury, prosecutor and executioner.

15   2.7.11. Plaintiffs have not breached a known legal duty to pay a privilege tax.

16   2.7.12. Defendants have failed to allege facts and circumstances of Plaintiffs owing a
17          privilege tax.

18                                   3. CONCLUSION

19        Wherefore, Plaintiffs moves this honorable court to deny the Defendants Motion to
20   Dismiss.

                                                                3/17/19
                                                      Tracy Arnold
                          1400 Harris Road, Adamsville, Tennessee, 38310
                                       telephone: (423)529-4335
                                      email: tracy@arnoldnet.org

                                                                3/19/19
                                                       Bill Arnold
                          1400 Harris Road, Adamsville, Tennessee, 38310
                                       telephone: (423)529-4323
                                      email: bill@arnoldnet.org

## VERIFICATION OF SERVICE

I, Tracy Arnold and Bill Arnold, verify now and will affirm in open court, that all herein be true. I have this day, March 19, 2019, delivered a true and correct copy, via USPS, of the following material:

- Plaintiffs' Memorandum In Opposition To Defendants' Motion to Dismiss

United States District Court
Western District of Tennessee
Federal Building
111 South Highland Ave #262
Jackson, TN 38301
C# 7015-0640-0001-3849-2428

RAINEY, KIZER, REVIERE & BELL, PLC
Counsel for: City of Crump, TN,
Larry Wilbanks, Tim Kelly, Glen Spencer
209 East Main Street
Jackson TN 38301
C# 7015-0640-0001-3849-2404

Randall Warren
Warren's Towing
2305 U.S. Highway 64
Adamsville, TN 38310
C# 7015-0640-0001-3849-2411

_Tracy Arnold_   3/19/19

Tracy Arnold
1400 Harris Rd Adamsville, TN 38310
telephone:(423)529-4335
email: tracy@arnoldnet.org

_Bill Arnold_   3/12/19

Bill Arnold
1400 Harris Rd Adamsville, TN 38310
telephone: (423)529-4323
email: bill@arnoldnet.org