# AT THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF TENNESSEE

Tracy Arnold, Bill Arnold
    Plaintiffs,

v.

City of Crump, Larry Wilbanks
(in his Official and Individual Capacity),
Tim Kelly (in his Official and Individual Capacity), Glen Spencer (in his Official and Individual Capacity), Randall Warren
    Defendants.

Cause # 1:18-cv-01227-STA-jay

RECEIVED BY

JUL 29 2019

Thomas M. Gould, Clerk
U.S. District Court
W.D. OF TN, Jackson

## PLAINTIFFS' OBJECTIONS TO MAGISTRATE'S RECOMMENDATIONS

Plaintiffs, asks the court to reconsider the magistrate judge's recommendation and files these objections, as authorized by Federal Rule of Civil Procedure 72(b)(2).

### 1.  INTRODUCTION

1.1. Plaintiffs are Bill Arnold and Tracy Arnold; Defendants are City of Crump, Larry Wilbanks, Tim Kelly, Glen Spencer and Randall Warren.

1.2. Plaintiff sued defendants for under 42 U.S.C. § 1983 for violations of their First, Fourth, Fifth, Thirteenth, and Fourteenth Amendment rights and violations of 42 U.S.C. § 1985(3) and 42 U.S.C. § 1986.

1.3. On 6/20/2019, Magistrate Judge Jon York recommended to grant the Defendant's Motion to Dismiss (D.E. 9).

1.4. Plaintiffs file these objections to the magistrate judge's recommendations.

### 2.  ARGUMENT

2.1. If a party timely objects to the magistrate judge's recommendations or findings, the district court must determine de novo any part of the

objectionable portions of the recommendations or findings. 28 U.S.C. §636(b)(1); Fed. R. Civ. P. 72(b)(3). The district court may then accept, reject, or modify the recommendations or findings, in whole or in part. 28 U.S.C. §636(b)(1); Fed. R. Civ. P. 72(b)(3). The court may also receive additional evidence or return the matter to the magistrate judge with instructions. 28 U.S.C. §636(b)(1); Fed. R. Civ. P. 72(b)(3).

2.2. Plaintiffs object to the magistrate judge's recommendations for the following reasons:

2.2.1.  Plaintiffs object to the use of tax and business language to restyle use and enjoyment of their chattel property, an automobile, as operating a vehicle. (D.E 14 PageID 133). "[T]he definition of "operate" indicates that management or oversight is an essential element of a business operation. (United Rentals, Inc. v. Keizer, 355 F.3d 399, 2004 Fed.App. 0005P (6th Cir. 01/07/2004)). [U]nder the regime of International Shoe, we see no difference for jurisdictional purposes between an automobile and any other chattel. (WORLD-WIDE VOLKSWAGEN CORP. ET AL. v. WOODSON, 100 S. Ct. 559, 444 U.S. 286 footnote 11 (U.S. 01/21/1980))

2.2.2.  Defendants from their own showing and articulated plainly enough by the magistrate judge's RR that they have not made a tax assessment.(D.E. 14 PageID 134). They are not pursuing penalties for non-payment of a tax that only the county clerk has standing to move on. They are not requiring the payment of 2017 registration privilege taxes nor 2018 privilege taxes. Defendants are only requiring Plaintiffs to apply for and obtain a current registration that would be good for a whole year into 2020. By requiring registration the Plaintiffs are being given the option to enter into commerce on the roads with the van or to perjure the application thus committing fraud on the government agency as conditions precedent to receiving Federal and State constitutional protections for said property. Plaintiffs argue that the license

plate, registration, constitutes a privilege tax pursuant to Tenn. Code 55-4-101(a)(2) and further argue that they are not engaged in any for profit activity affecting a public interest (ie: the public's roads) then nor now. (see Phillips v. Lewis, 3 Shann. Cas. 231) The record is empty in regards to what Law or Statute the Defendants are relying upon and where they have any standing to demand the payment of a privilege tax called registration, Tenn. Code 55-4-101(a)(2).

2.2.2.1. "The essential elements of the definition of privilege is occupation and business, and not the ownership simply of property, or its possession or keeping it. The tax is on the occupation, business, pursuits, vocation, or calling, it being one in which a profit is supposed to be derived by its exercise from the general public, and not a tax on the property itself or the mere ownership of it."...."The legislature cannot, under our constitution, declare the simple enjoyment, possession, or ownership of property of any kind a privilege, and tax it as such. It may declare the business, occupation, vocation, calling, pursuit, or transaction, by which the property is put to a peculiar use for a profit to be derived from the general public, a privilege and tax it as such, but it cannot tax the ownership itself as a privilege. The ownership of the property can only be taxed according to value.") Phillips v. Lewis, 3 Shann. Cas. 231

2.2.2.2. Defendants abandoned any enforcement and or penalties when they abandoned their quasi-criminal case which would have required proving wilfulness to color a tax dispute as a misdemeanor. "[T]he obligation to pay taxes is not penal. It is a statutory liability, quasi -contractual in nature , enforcible, if there is no exclusive statutory remedy, in the civil courts by the common law action of debt or indebitatus assumpsit." MILWAUKEE COUNTY v. M. E. WHITE CO., 56 S. Ct. 229, 296 U.S. 268, 272 (U.S. 12/09/1935) "As the sum demanded for the license is a tax, the provision for

the punishment of one who pursues his profession without a license is a part of the revenue system of the state, and is a means merely of enforcing payment of the tax itself, or of a penalty for not paying it. It is legally equivalent to a civil action of debt upon the statute, and its substantial character is not changed by calling the default a misdemeanor, and providing for its prosecution by information." ROYALL v. STATE OF VIRGINIA., 6 S.Ct. 510 (U.S. 02/01/1886).

2.2.2.3. Magistrate judge has plainly articulated that the Plaintiffs were informed as to their alleged duty to 'register the van'. He has failed place his finger on the law imposing a duty for the Plaintiffs to make application for a revocable privilege through registering their property. The issues not involving the van were properly before the general sessions court and dismissed. Those issues are res judicata and Defendants are not attempting to relitigate.

2.2.2.4. For the court to be reluctant and rarely apply continuing violation doctrine to § 1983 actions is in conflict with guiding common-law principles, and has a chilling effect of never having the continuing violation doctrine apply to § 1983 actions.

2.2.2.5. The United States Supreme Court stated that "Statutes of limitations are primarily designed to assure fairness to defendants. Such statutes "promote justice by preventing surprises through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared. The theory is that even if one has a just claim it is unjust not to put the adversary on notice to defend within the period of limitation and that the right to be free of stale claims in time comes to prevail over the right to prosecute them." (citation omitted) Moreover, the courts ought to be relieved of the burden of trying stale claims when a plaintiff has slept on his rights. This policy of repose, designed to protect defendants, is

frequently outweighed, however, where the interests of justice require vindication of the plaintiff's rights. (BURNETT v. NEW YORK CENTRAL RAILROAD CO., 85 S. Ct. 1050, 380 U.S. 424 (U.S. 04/05/1965)) Plaintiffs argue that they have noticed Defendants within the limitations period and Plaintiffs have not slept on their rights and executed as soon as they possibly could. Plaintiffs also argue that applying Tennessee statute of limitations of 1 year is in error as the initial and the current rights violation is the Defendants unlawful acts and failures to act based on State enactment of federal law implemented in by and through the commerce clause making Congress the principal and the Defendants federal actors.

2.2.2.6. Plaintiffs also argue that Defendants acts constitute continuing injury to Plaintiffs' liberty and property interests in the van. When a tort involves continuing injury, the cause of action accrues, and the limitation period begins to run, at the time the tortious conduct ceases. See, e.g., Fowkes v. Pennsylvania R.R. Co., 3 Cir. 1959, 264 F.2d 397. (Donaldson v. O'Connor, 493 F.2d 507 (5th Cir. 04/26/1974))

2.2.3. Plaintiffs argue that Stanley v. Malone, No. 2:07-CV-694, 2009 WL 485491 (S.D. Ohio Feb. 26, 2009) should have been appealed to the 6th circuit and that the Arnold's case is distinguished for the following reasons:

2.2.3.1. Stanley did receive some form of both administrative and judicial process.

2.2.3.2. It would be presumed that in Stanley the property was licensed thus having prima facie evidence that there was consent to regulate an instrumentality sworn to be put to privileged use. (see 16A CJS § 659)

2.2.3.3. In Stanley they did get their property back before filing suit. In this instant case the property is still under the control of the Defendants, though for Stanley the limitations should have started to run the day their property was returned.

2.2.3.4. Also, Stanley did not articulate a liberty interest in his property.

2.2.3.5. The 6th circuit quoted, "[T]he continued enforcement of an unconstitutional statute cannot be insulated by the statute of limitations" (Kuhnle Brothers Inc. v. County of Geauge, No. 95-3758 P.37 (6th Cir. 01/07/1997)), so how much could the enforcement of an unconstitutional policy by the Defendants be insulated by the statute of limitations.

2.2.3.6. In Virginia Hospital Association v. Baliles, 868 F.2d 653 (4th Cir. 02/22/1989) "The district court found that VHA had alleged an ongoing constitutional violation, and that the statute would not have begun to run until the violation ended.". Plaintiffs have argued that the violation has not ended as they have not had any due process, do not have their property and worst of all the Defendants and the Magistrate have said that Plaintiffs must pay a privilege tax on their property before they can enjoy said property, without providing the Plaintiffs with a statute allowing the taking of property to compel privilege taxation.

2.2.3.7. The Defendants wrongful conduct of (1) not providing any due process to the Plaintiffs to get their property, (2) not having any lawful authority to hold the property (3) attempting to compel Plaintiffs to engage in commerce or committing fraud are everyday torts until the van is returned to the Plaintiffs.

2.2.4. As articulated above at 2.2.2.1 these taxes are civil in nature and Defendants would have needed to prove wilfulness to trigger penalties, but the debt still would not take on a criminal character even when the trappings appear criminal. The lawful path for the Defendants would be some reporting or partnership with the county clerk to follow statutory requirements. If that would have happened in this case, then Plaintiffs would have been assessed and sent notice of an exact amount of tax debt. Which Plaintiffs could have paid and then challenged in chancery for the recovery. Under the current matter how could Plaintiffs have standing to recover the tax when they would

have to self assess and apply to pay the tax.

2.2.4.1. To borrow a phrase from the US Supreme Court in A. Magnano Co. v. Hamilton, Defendants police power in this case is "so arbitrary as to compel the conclusion that it does not involve an exertion of the [registration and] taxing power, but constitutes, in substance and effect, the direct exertion of a different and forbidden power, as, for example, the confiscation of property." (A. Magnano Co. v. Hamilton, 292 U.S. 40, 44 (1934))

2.2.4.2. The Defendants actions of taking property without due process and without any statutory authority to take property in order to compel taxation has not ended and continues to this day. The Magistrates R&R is rubber stamping the Defendants actions by further clarifying that the Plaintiffs can have their property back if they pay the privilege tax (ie: registration.) Plaintiffs are not in receipt of a legal duty to pay privilege taxes nor in receipt of facts and circumstances to the essential elements of privilege, not by the Defendants or the Magistrate. Plaintiffs have merely been told to pay the tax and they can use and enjoy their property.

2.2.5. For the purposes of interstate and intrastate business Congress has spoken on the subject of "license plates" and "driver's licences". Where said registration/licensing program is instituted by Congress, administered by the Secretary of Transportation the States have been delegated some federal powers. This creates the principal-agent relationship for the specified Congressional purpose. (see Plaintiffs Amended Complaint D.E. 5 § 4.10 et seq.)

2.2.5.1. Tennessee can't issue registration without a title. (TCA 55-4-101) and by signed agreement have implemented 49 U.S.C. 30503- National Motor Vehicle Title Information System (b)Verification Checks.—Each State shall establish a practice of performing an instant title verification check before issuing a certificate of title to an individual or entity claiming to have

purchased an automobile from an individual or entity in another State.

2.2.5.2. Tennessee Code 55-50-702 Part 7 reads "(a)...authority to make reciprocal agreements...(c) ....authority to make Compacts..."

2.2.5.3. Fn8..."Accordingly, before a compact between two States can be given effect it must be approved by Congress. See Virginia v. Maryland, 540 U.S. 56, 66 (2003). Once a compact receives such approval, it is "transform[ed] ... into a law of the United States." Ibid, (internal quotation marks omitted). The Supremacy Clause, Art. VI, cl. 2, then ensures that a congressionally approved compact, as a federal law, pre-empts any state law that conflicts with the Compact. See Fidelity Fed. Sav. & Loan Assn. v. De la Cuesta, 458 U.S. 141, 152-153 (1982). Tarrant Regional Water District v. Herrmann, (U.S. 06/13/2013) No. 11-889 ,46 U. S. 582

2.2.5.4. "....Congress may control the State laws so far as it may be necessary to control them for the regulation of commerce. ..That regulation is designed for the entire result,.... It produces a uniform whole..." Gibbons v. Ogden 22 U.S. 1, 206, 210.

2.2.5.5. Each person engaged in the business ... . Thereafter, all such trailers properly identified as belonging to the registered person and licensed in any state, territory, province, country or the District of Columbia shall be permitted to operate in this state on an **interstate** and intrastate basis. For the purpose of **interstate** and intrastate **reciprocal provisions** of this chapter, the utility trailers **shall be classified the same as private passenger automobiles and extended the same privileges**. (Tenn Code Ann. 55-4-111(d))

2.2.5.6. Federal tort liability, however, is based on traditional agency principles and thus depends upon the principal's ability to control the actions of his agent, and not simply upon whether the entity performs an important governmental function. See United States v. Orleans, 425 U.S. 807, 815, 96 S.

Ct. 1971, 1976, 48 L. Ed. 2d 390 (1976), United States v. Logue, 412 U.S. 521, 527-28, 93 S. Ct. 2215, 2219, 37 L. Ed. 2d 121 (1973).

2.2.5.7.  Federal four year statute of limitations apply as Titling and Registration are wholly dominated by congress. 28 U.S.C 1658 (a) Except as otherwise provided by law, a civil action arising under an Act of Congress enacted after the date of the enactment of this section may not be commenced later than 4 years after the cause of action accrues.

2.2.6.  Plaintiffs intend to show that at trial there is sufficient discoverable evidence to establish a pretext of unlawful discrimination by the Defendants and that direct evidence of a discriminatory policy or animus on the part of the Defendants is not required. (see Kline v. Tennessee Valley Authority, No. 94-6355 (6th Cir. 10/15/1997)

3. CONCLUSION

3.1. Because the magistrate judge's recommendations are erroneous, Plaintiff asks the court to reject them, DENY Defendants' Motion to Dismiss (D.E. 9), and return the matter to the magistrate judge with instructions to reconsider this matter as a continuing violation by federal actors.

_____ 7/26/19
Tracy Arnold
1400 Harris Road, Adamsville, Tennessee, 38310
telephone: (423)529-4335
email: tracy@arnoldnet.org

_____ 7/26/19
Bill Arnold
1400 Harris Road, Adamsville, Tennessee, 38310
telephone: (423)529-4323
email: bill@arnoldnet.org

## VERIFICATION OF SERVICE

I, Tracy Arnold and Bill Arnold, verify now and will affirm in open court, that all herein be true. I have this day, __7/26/19__, delivered a true and correct copy, via USPS, of the following material:

- Plaintiffs' Objections to RR

United States District Court
Western District of Tennessee
Federal Building
111 South Highland Ave #262
Jackson, TN 38301
C# 7018 3090 0001 5429 4005

RAINEY, KIZER, REVIERE & BELL, PLC
Counsel for: City of Crump, TN,
Larry Wilbanks, Tim Kelly, Glen Spencer
209 East Main Street
Jackson TN 38301
C#
7018 3090 0001 5429 4012

Randall Warren
Warren's Towing
2305 U.S. Highway 64
Adamsville, TN 38310
C# 7018 3090 0001 5429 4029

_____ 7/26/19
Tracy Arnold
1400 Harris Rd Adamsville, TN 38310
telephone:(423)529-4335
email: tracy@arnoldnet.org

_____ 7/26/19
Bill Arnold
1400 Harris Rd Adamsville, TN 38310
telephone: (423)529-4323
email: bill@arnoldnet.org